**Alicia G. MURPHY, M.D. and Mariano Allen, M.D., Appellants,**

v.

**Rick MENDOZA and Irene Mendoza, Appellees.**

No. 08–06–00089–CV.

Court of Appeals of Texas, El Paso.

Jan. 11, 2007.

Larry W. Hicks, Hicks & Lucky, P.C., El Paso, for Appellants.

Walter L. Boyaki, Miranda & Boyaki, El Paso, for Appellees.

Before McCLURE, J., BARAJAS, C.J. (Ret.), and ABLES, J.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Dr. Alicia G. Murphy and Dr. Mariano Allen appeal the denial of their motion to dismiss this medical malpractice suit due to the inadequacy of the plaintiff's expert report. We reverse and remand.

### FACTUAL SUMMARY

Rick and Irene Mendoza filed suit against Dr. Murphy, Dr. Allen, and Las Palmas Medical Center in March 2005.

The Mendozas alleged that the doctors, both of whom are pathologists, were negligent in reading Rick's bladder biopsy.[1] The radiology report indicated malignant papillary transitional cell carcinoma with extension into lamina propria and invasion of smooth muscle. As a result, a urologist performed a radical cystectomy, whereby Rick's bladder and prostate were both removed. The Mendozas specifically alleged that the pathologists were negligent in: (1) misreading or misinterpreting pathology specimens of biopsied bladder tissue; (2) incorrectly interpreting bladder biopsies as having smooth muscle invasion when they did not; and (3) incorrectly reporting pathology findings to the urologist. Simply stated, the Mendozas claim that the portion of the bladder removed showed no signs of cancer. If the cancer cells have not invaded the smooth muscle, removal is unnecessary. It is possible for the cancer cells to invade the external wall without invading the smooth muscle. The extent of the invasion and the radiology interpretation thereof is the crux of the issue before us.

In support of their claims, the Mendozas timely provided an expert report from Dr. Jonathan Epstein. The defendant pathologists challenged the adequacy of the report, complaining that it failed to comply with the requirements of Section 74.351 of the Civil and Practice Remedies Code. They argued that it was fatally flawed—defective, not deficient—and could not be cured.

The Mendozas filed a response and attached an affidavit from their attorney, John Mundie. Mundie attested that he tried to obtain the original slides from pathology so that Dr. Epstein could review

---

1. Apparently, Dr. Murphy read the original slides and Dr. Allen performed a peer review override.

them, but he was informed by Las Palmas that the originals could not be located.[2] A recut of the specimen was provided instead. The doctors objected to Mundie's affidavit, noting that only one of the slides reviewed by Dr. Epstein contained smooth muscle. The trial court denied the motion to dismiss.

### SUFFICIENCY OF THE REPORT

On appeal, the doctors complain that Dr. Epstein's report does not constitute a good faith effort to comply with Section 74.351 because it is speculative, conclusory, and fails to identify them. They also allege that the trial court abused its discretion in overruling their objection to Mundie's affidavit.

#### Standard of Review

We review the trial court's decision to deny a motion to dismiss for an abuse of discretion. *Kendrick v. Garcia*, 171 S.W.3d 698, 703 (Tex.App.-Eastland 2005, pet. denied).[3] A trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner. *Id.*, citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). An abuse of discretion does not occur merely because a trial judge decides a matter within her discretionary authority in a different manner than we would. *Downer*, 701 S.W.2d at 242.

#### Good Faith Effort

In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, tender one or more expert reports with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.[4] Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a)(Vernon 2005). The court shall grant a motion challenging the adequacy of an expert report only if it appears that the report does not represent an objective good faith effort to comply with the definition of an expert report. Tex.Civ.Prac. & Rem.Code Ann. § 74.351 (*l*). An "expert report" is defined as a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6).

To constitute a good-faith effort, an expert report must provide enough information to fulfill two purposes: (1) the

---

**2.** The Mendozas have alleged spoliation of evidence, but there is nothing in the record to suggest that either of the doctors played a role in the disappearance of the original slides.

**3.** In *Kendrick*, the court questioned whether the abuse of discretion standard of review continues to be applicable following the Legislature's adoption of Section 74.351. *Kendrick*, 171 S.W.3d at 702. Nevertheless, the courts have continued to apply it. *See, e.g., id.* at 702–03; *Manor Care Health Services, Inc. v. Ragan*, 187 S.W.3d 556, 561 (Tex.App.-Houston [14th Dist.] 2006, pet. filed); *Longi-*

*no v. Crosswhite ex rel. Crosswhite*, 183 S.W.3d 913, 915–18 (Tex.App.-Texarkana 2006, no pet.); *Group v. Vicento*, 164 S.W.3d 724, 727 (Tex.App.-Houston [14th Dist.]2005, pet. filed). In the absence of contrary authority, we will likewise review the ruling for an abuse of discretion. *Kendrick*, 171 S.W.3d at 703.

**4.** The Mendozas' lawsuit was filed before the effective date of the 2005 amendment to Section 74.351(a). *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351 (Vernon Supp.2006).

report must inform the defendant of the specific conduct the plaintiff has called into question, and (2) the report must provide a basis for the trial court to conclude that the claims have merit. *Bowie Memorial Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002), *citing American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 879 (Tex.2001). A report need not marshal all of the plaintiff's proof, but it must include the expert's opinion on the standard of care, breach, and causal relationship. *See Wright,* 79 S.W.3d at 52. In determining whether a report constitutes a good-faith effort, the trial court should look no further than the report itself since all the information relevant to the inquiry is contained within the four corners of the document. *Id.*

### *Breach of Duty*

■ Dr. Epstein based his conclusions upon the recuts of the tissue slides. The pathologists contend that his report is speculative because he assumed the recuts were an accurate representation of the original slides. We agree.

Dr. Epstein's report states:

In reading the original pathology report, its states 'Malignant, consistent with papillary transitional cell carcinoma, grade II/IV. Extension into lamina propria with invasion of smooth muscle.' Within the microscopic description it states 'Groups of malignant transitional epithelial cells are also seen extending into the lamina propria and indeed even are seen to be surrounding bundles of smooth muscle fibers.' The pathology report is ambiguous, as one can see multiple fibers within the lamina propria. These muscle fibers are termed muscularis mucosae. These muscle fibers are to be contrasted with the thick muscle bundles in the bladder wall, which are termed muscularis propria (detrusor muscle). I cannot tell from the pathology report whether the muscle bundles that are invaded by tumor are muscularis mucosae or muscularis propria. A clinician reading this report would most likely interpret the report to indicate tumor invading the muscularis propria, which would be an indication for radical cystectomy. However, I see no evidence of muscularis propria (detrusor muscle) invasion on the histological slides. I cannot be sure if this is the result of my review of recuts, as the original slides are not available for examination or there was never muscularis propria invasion on the slides and only muscularis mucosae invasion. Regardless, there is no evidence of muscularis propria invasion present on my review and radical cystectomy would not be indicated in the absence of muscularis propria invasion. In summary, I see no pathological evidence to support radical cystectomy in the case of Ricardo Mendoza.

Assuming the recuts are an accurate representation of the original slides, there is no evidence of muscularis propria invasion. The report should not have stated that there was invasion of smooth muscle, as clinicians will assume the muscle to represent muscularis propria (detrusor muscle). If the pathologist meant to state that there was only muscularis mucosae invasion and not muscularis propria invasion then to meet the standard of care for pathologists, the pathology report needs to be clear whether the malignant papillary transitional cell carcinoma has invaded the muscularis propria (detrusor muscle) or not. The pathology report of the original slides does not make clear the level of invasion. Clarity is important because if the tumor invades the muscularis propria then a radical cystectomy can be indicated. Without such invasion, a radical cystectomy is not indicated.

■ An expert must address the elements of the standard of care, breach, and causation in the report. *Wright,* 79 S.W.3d at 52. Although the report need not marshal all of the plaintiff's proof, the expert may not merely state conclusions about the elements. *Id.* Rather, an expert must explain the basis of his statements and link his conclusion to the facts. *Id., citing Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex.1999).

Here, Dr. Epstein's conclusion is not supported by the facts because he relies upon the *assumption* that the recuts were an accurate representation of the original slides. We do not suggest that an expert may *never* rely upon recuts in formulating an opinion. But when the basis of the suit is that the original slides were misinterpreted or misread, the expert must articulate how or why the slides he has reviewed would likely represent an accurate depiction of the originals. Because Dr. Epstein's report does not provide such an explanation, his opinion is both speculative and conclusory with regard to a breach of the standard of care.

### *Causation*

■ Next, the pathologists argue that Dr. Epstein assumed Rick's surgeon chose to do the cystectomy based solely on the pathology report. Dr. Epstein's report addressed the issue of causation in the following manner:

> The surgeon could have reasonably interpreted the report to indicate tumor invading the muscularis propria. Failure of the pathologist to make clear whether tumor invaded the muscularis propria was below standard. As a result of the misdiagnosis, or failure to make clear the absence of invasion of muscularis propria, Mr. Mendoza underwent a radical cystectomy that was not necessary.

■ To establish causation, an expert report must provide information linking the defendant's purported breach of the standard of care to the plaintiff's injury. *See Hutchinson v. Montemayor, M.D.,* 144 S.W.3d 614, 617 (Tex.App.-San Antonio 2004, no pet.); *see also Wright,* 79 S.W.3d at 53. The expert must also explain the basis of his statements to link his conclusions to the facts. *Wright,* 79 S.W.3d at 52.

Dr. Epstein's report fails to articulate the link between the breach of the standard of care and the purported injury. He merely contends the surgeon "could have reasonably interpreted the report" to indicate a tumor was invading the muscularis propria. Nothing in the report substantiates his assumption that the surgeon based the decision to perform a cystectomy on the faulty pathology report. *Hutchinson,* 144 S.W.3d at 618 (a causal connection in a medial malpractice suit cannot be made to turn upon speculation or conjecture and must show more than a mere possibility). Nor can we infer that the surgeon relied upon the ambiguous report in deciding the surgical options. *See Wright,* 79 S.W.3d at 53; *Hutchinson,* 144 S.W.3d at 617. In short, the report fails to link the purported breach with the surgeon's decision to perform the cystectomy.

■ The pathologists also challenge Dr. Epstein's qualifications, complaining that as a pathologist, he cannot render a surgical opinion. Dr. Epstein's *curriculum vitae* is extensive. He is the Reinhard Professor of Urologic Pathology, Directory of Surgical Pathology, and a Professor in the Departments of Pathology, Urology, and Oncology at John Hopkins University Medical Center in Baltimore, Maryland. He has numerous editorial appointments, including the *American Journal of Surgical Pathology* and *Urologic Oncology.* The recipient of the American Cancer So-

ciety Clinical Oncology Career Development Award, The Johns Hopkins Hospital Department of Pathology Faculty Teaching Award, and the Arthur Purdy Stout Society of Surgical Pathologists Award, he has written numerous articles and books on pathology and urologic disorders. A national consultant for urologic pathology, Dr. Epstein is responsible for the attending division of surgical pathology. He instructs pathology residents in surgical pathology, conducts a series of conferences for pathology residents in urologic pathology, soft tissue pathology, and critical literature review. He is the co-director of the Johns Hopkins Department of Pathology, Critical Issues in Surgical Pathology Course.

While Dr. Epstein certainly has knowledge of surgical pathology, the extent of his expertise and qualification to render a surgical opinion is unclear. Dr. Epstein does not explain how or whether his qualifications as a surgical pathologist qualify him to render an opinion on Rick's surgical treatment. We sustain Issues One and Two.

### Identification of Defendants

 In their third issue for review, the doctors contend that the report fails to identify them by name or to distinguish the conduct giving rise to the claims against them. Dr. Epstein stated:

I have reviewed the pathology records and operation report and recuts of tissue slides from Las Palmas Medical Center in El Paso, Texas concerning the transurethral resection of bladder tumor performed on Ricardo Mendoza on November 27, 2001. I have also reviewed the pathology records and operation report of the radical cystoprostatectomy performed on December 15, 2001.

. . .

I have reviewed the slides from his bladder biopsy, labeled 01–6376A and B from Las Palmas Medical Center, El Paso, Texas. The specimen part A shows an invasive high grade papillary urothelial carcinoma. The carcinoma invades the lamina propria. The muscularis propria is not present for evaluation. Specimen B shows a non-invasive high grade papillary urothelial carcinoma. There is no evidence of muscularis propria (detrusor muscle) invasion present on this specimen.

The expert report must inform the defendant of the specific conduct the plaintiff has called into question. *Palacios,* 46 S.W.3d at 879. What is required is a fair summary of the expert's opinions about the standard of care, breach, and causal relationship *as to each defendant. See id.* The Mendozas contend Dr. Epstein's report was adequate to apprise the doctors of the conduct that is questioned because the pathology report was signed by both of them and Dr. Epstein's report does not reference any other physicians' involvement in the pathological assessment.

Dr. Epstein reviewed various pathology and operation reports and stated that his opinion was based on the "original pathology report." The report does not mention either pathologists by name. *Garcia v. Marichalar,* 198 S.W.3d 250, 254–55 (Tex. App.-San Antonio 2006, no pet.)(Section 74.351(r)(6) requires that an expert report explain how the care *rendered by the physician* failed to meet the applicable standard of care and the causal relationship between that failure and the injury suffered). The report also fails to identify the contribution of each doctor to the assessment and analysis of Mendoza's specimens, and whether either doctor is subject to a different standard of care if the roles and responsibilities differed. *Garcia,* 198

S.W.3d at 254–55 (although expert report focused on single incident, it did not inform the defendant of his specific conduct called into question because multiple defendants were sued and the report failed to discuss how the defendant's care failed to meet standard of care or how the defendant's care caused harm). We sustain Issue Three.

### John Mundie's Affidavit

■ In their fourth issue and final issue, Drs. Murphy and Allen contend the trial court erred in overruling their objection to Mundie's affidavit:

> I tried to obtain the original slides from pathology specimen 01–VH–S006376 from Las Palmas Medical Center so my expert pathologist, Dr. Jonathan Epstein, M.D., could review them. Upon inquiry with Dr. Glen Friedman, M.D. of the Pathology Department at Las Palmas Medical Center I learned that the original slides from pathology specimen 01–VH–S006376 could not be located. I did, however, receive recuts of the pathology specimen.

Whether the report represents a good faith effort must be determined only by the information contained within the four corners of the document itself. *See Palacios,* 46 S.W.3d at 878. To the extent the trial court relied upon Mundie's affidavit, it abused its discretion.[5] We sustain Issue Four.

### CONCLUSION

Although the expert report was deficient, it was timely filed. The trial court could grant the Mendozas' request for an extension of time to cure the report's deficiencies.[6] Section 74.351(c); *Wells v. Ashmore,* 202 S.W.3d 465, 468 n. 1 (Tex.App.-Amarillo 2006, no pet.h.); *Longino v. Crosswhite ex rel. Crosswhite,* 183 S.W.3d 913, 918 n. 2 (Tex.App.-Texarkana 2006, no pet.). We reverse and remand for proceedings consistent with this opinion.

BARAJAS, C.J., (Ret.), and ABLES, J., sitting by assignment.

---

5. Mundie's statements regarding the recuts and the missing slides essentially mirror those in Dr. Epstein's report. Dr. Epstein stated he reviewed recuts of the slides and opined that misplacing the original cuts by those responsible for storing them breached the requisite standard of care.

6. We express no opinion on whether the report can be cured. The pathologists have suggested that Dr. Epstein cannot offer an opinion as to a breach of the standard of care when the original slides are missing.