COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EFRAIN RIVERA, M.D. / ANITA LOWEREE, | § | No. 08-06-00185-CV |
| | § | |
| Appellant/Cross-Appellant, | § | Appeal from the |
| | § | |
| v. | § | 34th Judicial District Court |
| | § | of El Paso County, Texas |
| ANITA LOWEREE / EFRAIN RIVERA, M.D., | § | (TC# 2005-1403) |
| | § | |
| Appellee/Cross-Appellee. | | |

## **O P I N I O N**

Appellant/Cross-Appellee Efrain Rivera, M.D. appeals from the trial court's denial of his motion to dismiss the health care liability suit brought by Appellee/Cross-Appellant Anita Loweree.[1] Specifically, Dr. Rivera argues the trial court abused its discretion in denying the motion because Ms. Loweree did not serve upon him or his attorney a TEX.CIV.PRAC.& REM.CODE ANN. § 74.351 expert report with curriculum vitae within 120 days of filing the claim in the underlying suit. By cross-appeal, Ms. Loweree challenges the same order, arguing the trial court erred in failing to deny Dr. Rivera's motion based on waiver. We find we have jurisdiction over this interlocutory appeal and affirm the trial court's order.

## **BACKGROUND**

---

[1] Dr. Rivera has also filed an original petition for mandamus relief with respect to the trial court's denial of his motion to dismiss and grant of a one 30-day extension to Ms. Loweree to cure any deficiencies in her expert report. That original proceeding has been consolidated with this appeal for purposes of briefing and oral argument. In an opinion issued this same date, the Court has granted relief in the mandamus proceeding. *See In re Efrain Rivera, M.D.*, No. 08-06-00184-CV, -- S.W.3d-- (Tex.App.--El Paso August 28, 2008, orig. proceeding).

On March 1, 2005, Ms. Loweree filed suit against Paso Del Norte Surgery Center, Emmanuel Rivera, M.D., and Mario Padillo, M.D. alleging the defendants were negligent in their positioning of her body during a gynecological surgery procedure on December 20, 2002, which resulted in permanent neurologic damage in her right upper extremity. On March 30, Ms. Loweree filed her first amended petition, naming Efrain Rivera, M.D., not Emmanuel Rivera, M.D., as a defendant. She alleged that Dr. Efrain Rivera is a duly licensed physician who practices medicine generally and particularly in his specialty of anesthesiology and that Dr. Rivera provided anesthesia services for the December 20 surgical procedure. On June 16, 2005, Ms. Loweree served an expert report and curriculum vitae of John M. H. Allen, M.B., B.S., J.D., F.R.C.S. On August 24, 2005, Dr. Rivera filed his "Motion to Dismiss Defendant Efrain Rivera, MD Pursuant to Civ.Prac.&Rem.Code Sec. 74.351." In his motion, Dr. Rivera argued that Dr. Allen's report did not name him nor did it implicate his conduct, thus, Ms. Loweree did not serve him with a Section 74.351 expert report within 120 days of filing her claim. Dr. Rivera sought dismissal with prejudice under Section 74.351(b). Dr. Rivera also sought dismissal on the ground that Dr. Allen's report was inadequate because it failed to meet the requirements of an expert report as defined by Section 74.351(r)(6) and did not represent an objective good faith effort to comply with the statute.

Ms. Loweree responded to Dr. Rivera's motion, asserting that Dr. Rivera had waived all objections to the expert report by failing to file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served. Ms. Loweree argued that Dr. Allen's report clearly implicated the care of the anesthesiologist and that the alleged deficiencies raised by Dr. Rivera in his motion, such as failing to mention Dr. Rivera by name,

were deficiencies to be considered only if objections to the report were timely filed.

Ms. Loweree also asserted that Dr. Allen's report was an objective good faith effort under Section 74.351(*l*) and in the alternative she requested a 30-day extension to cure any deficiencies. The trial court heard Dr. Rivera's motion on September 23, 2005 and took it under advisement. Dr. Rivera filed a supplemental brief on December 27.

On June 14, 2006, the trial court entered an order denying Dr. Rivera's motion to dismiss under Section 74.351(b). That same day, the trial court entered another order granting Ms. Loweree's request for a 30-day extension under Section 74.351(c). In that second order, the trial court found that Ms. Loweree's expert report was timely filed as to Dr. Rivera. The trial court also found that the expert report was an objective good faith effort, but that it had deficiencies as to Dr. Rivera. Consequently, the trial court granted Ms. Loweree the 30-day extension to cure any deficiencies in her expert report.

Dr. Rivera filed this accelerated interlocutory appeal, asserting that the trial court abused its discretion in denying his motion to dismiss. Ms. Loweree has filed a cross-appeal in this interlocutory appeal.

## JURISDICTION

Where there is not a final and appealable order, this Court has jurisdiction over an interlocutory order only when expressly provided by statute. *See Stary v. DeBord*, 967 S.W.2d 352, 352-53 (Tex. 1998). Section 51.014(a)(9) of the Texas Civil Practice and Remedies Code, expressly grants a party the right to appeal an interlocutory order of a trial court that "denies all or part of the relief sought by a motion under Section 74.351(b) . . . ." *See* TEX.CIV.PRAC.& REM.CODE ANN. § 51.014(a)(9)(Vernon 2008). However, Section 51.014(a)(9) also expressly

-3-

prohibits a party from appealing "an order granting an extension under Section 74.351." *Id.*

In Dr. Rivera's motion to dismiss, he sought dismissal with prejudice pursuant to Section 74.351(b), arguing that although Ms. Loweree served him with Dr. Allen's report, that report did not name him nor did it implicate his conduct. Dr. Rivera asserted that no Section 74.351 expert report implicating his conduct had been served upon him. In addition, Dr. Rivera challenged the adequacy of Dr. Allen's purported expert report, arguing that it failed to meet the statutory requirements of an expert report under Section 74.351(r)(6). The trial court denied Dr. Rivera's motion without stating its reasoning or the basis for the denial. On the same day, the trial court entered another order granting Ms. Loweree's request for a 30-day extension pursuant to Section 74.351(c). In a related proceeding, this Court determined that the trial court improperly granted a 30-day extension to cure and vacated the trial court's order. *See In re Efrain Rivera, M.D.*, No. 08-06-00184-CV, -- S.W.3d-- (Tex.App.--El Paso August 28, 2008, orig. proceeding)(A trial court order granting a 30-day extension after an *untimely* objection by a defendant is an impermissible "order granting an extension under 74.351" and thus, Section 51.014(a)(9) would not exclude an interlocutory appeal in that circumstance). Accordingly, the order denying Dr. Rivera's motion to dismiss is an interlocutory order from which Dr. Rivera can invoke the jurisdiction of this Court and we will address the merits of the appeal.

## DENIAL OF SECTION 74.351(b) MOTION TO DISMISS

On appeal, Dr. Rivera contends the trial court abused its discretion by denying his motion to dismiss because Ms. Loweree did not serve upon him or his attorney a Section 74.351 expert report as to him with curriculum vitae within 120 days of filing the claim in the underlying suit which implicated his conduct, but rather the report served, Dr. Allen's report, did not name him,

did not implicate his conduct, and failed to meet the statutory requirements of an expert report. We review the trial court's order denying Dr. Rivera's motion to dismiss under an abuse of discretion standard. *See American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001).

At the time Ms. Loweree filed her claim against Dr. Rivera, she was required not later than the 120th day after the date the claim was filed, to serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against who a liability claim was asserted. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(a)(Vernon Supp. 2008). On June 16, 2005, Ms. Loweree served upon Dr. Rivera the expert report and curriculum vitae of Dr. Allen. Section 74.351(a) requires that "[e]ach defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(a). Dr. Rivera did not file his motion to dismiss until August 24, 2005. Therefore, if Ms. Loweree timely served an expert report that implicated his conduct, Dr. Rivera has waived his objections to the adequacy of that expert report by failing to raise his objections timely.

Turning to Dr. Allen's report, we first note that in his report he states that it was made in response to Ms. Loweree's attorney's request for written analysis of Ms. Loweree's medical records. Dr. Allen states that he has "knowledge of the standard of care for positioning patients for surgery, whether gynecological, orthopedic or other specialty and for their monitoring during the post-anesthesia and recovery periods . . ." and "[is] qualified to give opinions on the standard

of care, breach of the standard of care and causation in this case, which involves either positioning for surgery or post-anesthesia and recovery care." Dr. Allen then referenced extracts from the records provided from Ms. Loweree's December 20, 2002 surgical procedure at Paso Del Norte Surgery Center, including numerous references to the surgical procedure report, specifically noting when anesthesia started and finished, the post anesthesia recovery score, and the nursing records, specifically noting the patient's complaints of numbness in her right arm. Dr. Allen's report also notes from the April 16, 2003 record of Ms. Loweree's care at the Hand & Microsurgery Center of El Paso, P.A., the following: "'. . . hysterectomy in December 2002 and . . . was unable to move her right arm after she woke from anesthesia . . . Impression: Global plexopathy . . . .'"

Dr. Allen provided the following analysis in his discussion section:

Mrs. Anita Loweree suffered the brachial plexus injury during surgery while under general anesthesia for three hours and fifty minutes, but it was not identified until 1620, almost five and a half hours after the end of anesthesia, after which nursing notes again do not document it at times quoted above.

While it is not certain at what time Mrs. Loweree suffered a brachial plexus injury, the most likely period is during surgery, when she was unconscious and immobile.

The standard of care for surgeons, anesthesiologists, anesthetists and nurses who position anesthetized patients includes but is not limited to positioning, padding and supporting them in such a way that their limbs are not subjected to pressure or traction injuries to nervous tissue such as Mrs. Loweree suffered. While all those who participate in positioning a patient are responsible for their own acts, ultimate responsibility for positioning lies with the patient's surgeon.

The standard of care for patients during recovery from general anesthesia includes but is not limited to attention to positioning for the same reasons, but also includes accurate monitoring, including but not limited to data required by the monitoring charts quote above, and reporting abnormal observations such as a fresh complaint of numbness and weakness in a limb to the patient's physician as

-6-

soon as possible. Responsibility lies with the nursing staff in whose care the patient is placed.

Based on the review of records it is my opinion that Anita Loweree's treatment fell below the standard of care by allowing pressure or traction on her brachial plexus to occur and continue until she suffered the plexopathy documented as quoted above, either as a result of inadequate care by those who positioned her while she was anesthetized, for which those who positioned her and, ultimately, the surgeon are responsible, or as a result of inadequate monitoring during recovery, which is the responsibility of nursing staff monitoring her; and that as a result she suffered a brachial plexus injury.

These opinions are expressed 'to a reasonable medical probability'.

Dr. Rivera complains that within the four corners of Dr. Allen's report it did not name him, did not implicate his conduct, did not state that a standard of care was applicable to any actions or inactions by him, did not allege that he breached a standard of care, and did not allege that his actions or inactions caused any harm, injury, or damage to Ms. Loweree.

Under Section 74.351(a), if Dr. Rivera's conduct was implicated in Dr. Allen's report, he was required to file and serve any objection to the sufficiency of the report not later than the 21st day it was served or else all his objections would be waived. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(a). It is undisputed that Ms. Loweree served Dr. Allen's report and curriculum vitae upon Dr. Rivera within 120 days of filing the claim against him. Therefore, despite any complaints Dr. Rivera has concerning the adequacy of that expert report, the dispositive question in this case is whether that report "implicated" Dr. Rivera's conduct such that he was required to file and serve his objections to that report not later than the 21st day after the date it was served and by failing to do so has waived his objections.

Chapter 74 does not define the term "implicated." The dictionary defines "implicate" as "1. to show to be also involved, usually in a incriminating manner: *to be implicated in a crime.*

-7-

2. to imply as a necessary circumstance, or as something to be inferred or understood. 3. to connect or relate to intimately; affect as a consequence: *The malfunctioning of one part of the nervous system implicates another part*. 4. Archaic. to fold or twist together; intertwine; interlace." Webster's New Unviersal Unabridged Dictionary 961 (2001); see also Merriam-Webster Online Dictionary, *available at* http://www.m-w.com/dictionary/implicate. Relying on *Jernigan v. Langley*, 195 S.W.3d 91 (Tex. 2006), Dr. Rivera asserts that similar to a review of the sufficiency of an expert report, we are bound by the four corners of the report and cannot look outside the report and cannot make inferences in determining whether Dr. Allen's report implicates his conduct. *See Jernigan*, 195 S.W.3d at 93 (limiting the *adequacy* analysis to the four corners of the timely-filed expert reports in determining whether the reports constitute a good faith effort to meet the statutory requirements). We disagree. By definition, the determination as to whether or not a defendant's conduct is implicated in the report served by the plaintiff permits natural inferences from the statements presented in that report. *See* TEX.GOV'T CODE ANN. § 311.011(a)(Vernon 2008)(words not defined in a statute are given their plain meaning, read in context, and construed according to the rules of grammar and common usage). Therefore, the Legislature must have intended by use of the term "implicated" to set a lower bar for determining whether a defendant must file and serve his or her objections to the expert report served by a plaintiff, than that required under a sufficiency review of that same report.[2]

---

[2] We note that the instant case is readily distinguishable from that in our recent opinion, *Murphy v. Mendoza*, 234 S.W.3d 23, 30 (Tex.App.--El Paso 2007, no pet.). In *Murphy*, the trial court found the expert report was sufficient to comply with the statutory requirements and did not grant a 30-day extension to cure. *Id*. at 30. Thus, the issue of whether the expert report constituted a good-faith effort to comply with Section 74.351 was squarely before the Court and our adequacy determination was based only on the information contained within the four corners of the document itself. *Murphy*, 234 S.W.3d at 26, 29. Unlike here, the waiver provision was

After reviewing Dr. Allen's report, we conclude that it was an expert report that implicated Dr. Rivera's conduct as the only anesthesiologist against whom Ms. Loweree asserted a health care liability claim.[3] In particular, Dr. Allen referenced extracts from the records of Ms. Loweree's December 20, 2002 surgical procedure at Paso Del Norte Surgery Center, noting when anesthesia started and finished. Dr. Allen opined that Ms. Loweree suffered the brachial plexus injury during surgery while under general anesthesia when she was unconscious and immobile. Dr. Allen then stated his opinion as to the appropriate standard of care for anesthesiologists and anesthetists who position anesthetized patients, explained how Ms. Loweree's treatment fell below the standard of care by allowing pressure or traction on her brachial plexus to occur and continue, and opined that her injury was either the result of inadequate care by those who positioned her while she was anesthetized or the result of inadequate monitoring during recovery. Dr. Rivera's conduct was implicated in Dr. Allen's report by his professional capacity as the physician practicing in his specialty of anesthesiology who Ms. Loweree alleged provided anesthesia services when she underwent the gynecologic surgery procedure on December 20, 2002 at Paso Del Norte Surgery Center's facility. While Dr. Allen's report fails to refer to Dr. Rivera by name when describing his alleged conduct, this failure is essentially a complaint about the deficiencies in the report, which Dr. Rivera could have raised by timely filing and serving his objections to Dr. Allen's report within the 21-day deadline

not at issue in *Murphy*.

[3] An expert report is defined as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care providers failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(r)(6).

for such a response. Because Ms. Loweree timely served upon Dr. Rivera an expert report and curriculum vitae for Dr. Allen and that report implicated Dr. Rivera's conduct, Dr. Rivera was required to file and serve any objection to the sufficiency of that report not later than the 21st day after the date it was served. Therefore, Dr. Rivera waived his objections to the adequacy of Dr. Allen's report, which he had raised in his motion to dismiss. Since Ms. Loweree timely served her expert report and curriculum vitae and Dr. Rivera was precluded from raising his objections, the trial court did not abuse its discretion in denying Dr. Rivera's motion to dismiss. Dr. Rivera's issues on appeal are overruled.

## CROSS-APPEAL

By cross-appeal, Ms. Loweree raises one issue, in which she contends the trial court erred in failing to deny Dr. Rivera's motion to dismiss on the ground that all objections were waived because Dr. Rivera failed to file and serve his objections to her expert report within the 21-day deadline. The trial court's order denying Dr. Rivera's motion to dismiss, however, does not specify on what grounds it was denying the motion. Therefore, we cannot conclude the trial court abused its discretion when that order can be affirmed on the waiver theory asserted by Ms. Loweree in response to Dr. Rivera's motion to dismiss. To the extent that Ms. Loweree's complaint is directed at the trial court's grant of her request for a 30-day extension to cure any deficiencies, which she plead only as alternative relief, she is not permitted to challenge that order by interlocutory appeal. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(a)(9).

The trial court's order denying Dr. Rivera's Section 74.351(b) motion to dismiss is affirmed.

-10-

August 28, 2008

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.)(Sitting by Assignment)