Affirmed and Memorandum Opinion filed March
16, 2010.

 

In
The

Fourteenth
Court of Appeals

____________

NO.
14-09-00532-CV

____________

MICHAEL
J. REARDON, M.D., Appellant

V.

ROYCE
NELSON, Appellee

                                                                                                        

On
Appeal from the 334th District Court

Harris
County, Texas

Trial
Court Cause No. 2006-58453

 



M
E M O R A N D U M   O P I N I O N

Appellant, Michael J. Reardon, M.D.
(“Dr. Reardon”), appeals the trial court’s order denying his motion to dismiss appellee,
Royce Nelson’s (“Nelson”), medical- malpractice suit on the ground that Nelson’s
expert, John F. Seaworth, M.D. (“Dr. Seaworth”), provided an inadequate report. 
In three issues, Dr. Reardon contends the trial court abused its discretion by (1)
finding Dr. Seaworth was “qualified to provide opinions on how the alleged
breach of the standard of care caused [Nelson’s] damages,” (2) determining “that
the causation opinion of [Nelson’s] cardiology expert was linked to facts in
the expert’s report, and not just speculation and assumptions,” and (3) “failing
to dismiss all claims regarding the standard of care during the performance of a
coronary artery bypass surgery.”  Because all dispositive issues are settled in
Texas law, we issue this memorandum opinion and affirm the trial court’s order. 
See Tex. R. App. P. 47.4.

I.                 
Background

          Dr.
Reardon performed double bypass surgery on Nelson’s coronary arteries. 
Apparently, Dr. Reardon did not recognize that Nelson has a ramus artery which
is an abnormal physiological presentation in coronary arteries. Dr. Reardon
erroneously bypassed the ramus instead of the circumflex artery. After he was discharged
from the hospital, Nelson experienced pain and shortness of breath. A subsequent
heart catheterization was performed, revealing a lesion and narrowing of the
circumflex artery. Subsequently, a stent was inserted into the circumflex
artery to restore blood flow.

Nelson filed this medical-malpractice
suit, seeking to recover damages for past and future medical expenses, physical
impairment, and physical pain and mental anguish.  Subsequently, Nelson
delivered expert reports authored by Dr. Ihsan Shanti and Dr. Seaworth as
required by section 74.351(a) of the Texas Civil Practice and Remedies Code.  See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2009).  Dr.
Reardon filed a motion to dismiss, challenging the qualifications and
sufficiency of both reports.  The trial court denied Dr. Reardon’s motion.  Our
court reversed the denial, concluding (1) Dr. Shanti is not qualified to provide
an expert opinion sufficient to fulfill Nelson’s obligations under section
74.351 and (2) Dr. Seaworth is qualified, but his report is not sufficient.  Reardon
v. Nelson, No. 14-07-00263-CV, 2008 WL 4390689, at *1, 5, 7 (Tex. App.—Houston
[14th Dist.] Sept. 30, 2008, no pet.) (mem. op.).   Because Nelson requested an
extension to modify his expert reports, this court remanded the case to the
trial court for further consideration.  Id. at *7.  

The trial court granted the
extension, and Nelson timely delivered Dr. Seaworth’s modified report.  In his
amended report, Dr. Seaworth opined that Dr. Reardon failed to review video
images and pre-operative procedure worksheets, resulting in his failure to bypass
the correct artery; consequently, Nelson was required to undergo another
procedure in which a stent was placed in his circumflex artery; and Nelson will
incur damages in the future because he lacks the benefit of a bypass on his
circumflex artery.

The trial court denied Dr.
Reardon’s second motion to dismiss, concluding that Dr. Seaworth’s report
“specifically identifies what Dr. Reardon should have done differently, how he
should have done it, and when as required by the Court of Appeals.”  However,
the trial court granted Dr. Reardon’s motion to the extent Dr. Seaworth
“purports to criticize Dr [sic] Reardon for failure to perform surgical techniques designed to identify
the correct artery . . . . ”  The trial court concluded, “[t]he report
fails to identify any surgical procedure that Dr. Reardon failed to perform to
identify the correct artery.”  

II.              
Standard of Review and
Applicable Law

          Nelson’s medical-malpractice
claim is governed by Chapter 74 of the Civil Practice and Remedies Code.  See
Tex. Civ. Prac. & Rem. Code Ann. § 74.001 (Vernon 2005). 
Under section 74.351, a claimant is required to file an expert report within
120 days after a claim is filed.  Tex. Civ. Prac. & Rem. Code Ann. §
74.351(a).  An expert report is defined as:

[A]
written report by an expert that provides a fair summary of the expert’s
opinions as of the date of the report regarding applicable standards of care,
the manner in which care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.

Id. § 74.351(r)(6).  A
defendant may file a motion challenging the sufficiency of an expert report.  See
id. § 74.351(a).  The court must grant the motion only if it concludes,
after a hearing, the report “does not represent an objective good faith effort
to comply with the definition of an expert report . . . .”  Id. § 74.351(l). 


            We review the trial
court’s determination of a physician’s qualifications to render an expert
opinion in a health-care liability case under an abuse-of-discretion standard. Baylor
Coll. of Med. v. Pokluda, 283 S.W.3d 110, 116­­–17 (Tex. App.—Houston [14th
Dist.] 2009, no pet.) (citing Larson v. Downing, 197 S.W.3d 303, 304–05
(Tex. 2006) (per curiam)); Mem’l Hermann Healthcare Sys. v. Burrell, 230
S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  We also review
a trial court’s ruling regarding the adequacy of an expert report for abuse of
discretion.  Am. Transitional Care Ctrs. of Tex., Inc. v.  Palacios, 46
S.W.3d 873, 877 (Tex. 2001).  A trial court abuses its discretion if it acts in
an arbitrary or unreasonable manner, without reference to guiding rules or
principles.  See Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex.
2002).  We may not substitute our judgment for that of the trial court when
reviewing matters committed to the trial court’s discretion.  See Flores
v. Fourth Court of Appeals, 777 S.W.2d 38, 41 (Tex. 1989).

III.    Analysis

A.        Dr. Seaworth’s Qualifications

In this court’s previous opinion,
we described the gravamen of Nelson’s claim as follows:  “Nelson’s complaint is
that Dr. Reardon performed the admittedly successful bypass on a healthy artery
rather than the artery needing the bypass.”  Reardon, 2008 WL 4390689,
at *3.  We concluded that Dr. Seaworth is qualified to render opinions
regarding Nelson’s claim as described. 

Dr. Reardon returns to this court
and recasts his complaints about Dr. Seaworth’s qualifications.  In his first issue,
Dr. Reardon contends the trial court “abuse[d] its discretion in determining
that [Nelson’s] cardiologist expert was qualified to provide opinions on how
the alleged breach of the standard of care caused [Nelson’s] damages.” Dr.
Reardon refers this court to the following language in Dr. Seaworth’s amended
report:  “Dr. Reardon’s failure to make this review and use the information
contained on the worksheet led to Dr. Reardon sewing a bypass graft into the wrong
vessel.”  Dr. Reardon then argues that Dr. Seaworth’s report and curriculum
vitae “fail to show how he is qualified to make this assumption and opinion.” 

First, we disagree with Dr.
Reardon’s assessment of our earlier opinion. This court did not narrowly view
Dr. Seaworth’s qualifications.  However, we will briefly address Dr. Reardon’s new
contention. Dr. Reardon argues Dr. Seaworth’s “causation opinion assumes that
if a cardiovascular surgeon is aware that a patient has a ramus artery, the
surgeon will be able to identify it during the surgery and distinguish it from
other arteries.”  Relying on Broders v.
Heise, 924 S.W.2d 148, 152 (Tex. 1996), Dr. Reardon
contends Dr. Seaworth is not qualified to render an opinion regarding causation
because he is not a cardiovascular surgeon. However, Dr. Reardon’s reliance on Broders
is misplaced because the court did not conclude that only a doctor practicing
in the defendant physician’s specialty should be allowed to testify.  See
id. at 152–53 (noting, “[the court’s] holding does not mean that only a
neurosurgeon [could] testify about the cause in fact of death from an injury to
the brain, or even that an emergency room physician could never so testify.”). 
Moreover, in Roberts v. Williamson, 111 S.W.3d 113,
121–22 (Tex. 2003), the court concluded that a pediatrician who had experience
and expertise regarding the specific causes and effects of neurological
injuries could testify regarding causation even though he was not a
neurologist.  Although Dr. Seaworth is not a cardiovascular surgeon, he may be qualified
to render certain opinions regarding causation in this case if he otherwise
satisfies the requirements outlined in the Texas Rules of Evidence.  See Tex.
Civ. Prac. & Rem. Code  § 74.351(r)(5)(C).

Second, under the Texas Rules of
Evidence, an expert must have education, training, and experience relevant to
the specific issue before the court. See Tex. R. Evid. 702; Broders,
924 S.W.2d at 153. Therefore, Nelson must demonstrate to the trial court
that Dr. Seaworth has the knowledge, training, and experience sufficient to
assist the jury in determining whether Dr. Reardon’s misidentification of the
ramus artery caused Nelson’s damages.  See Broders, 924 S.W.2d at 153.  According
to his amended report and curriculum vitae, Dr. Seaworth is board certified in
internal medicine and cardiovascular diseases and currently practices as Chief
of Cardiology at Northeast Baptist Hospital in San Antonio, Texas.  He has over
twenty-five years experience in treating patients before and after coronary
bypass surgery.  He has reviewed thousands of angiograms and assisted surgeons both
before and after bypass surgery. 

Dr. Reardon seems to ignore the
fact that cardiovascular surgeons and cardiologists regularly employ the same
techniques to identify the arteries in order to make their diagnosis and
recommend proper treatment.  He argues that every licensed medical doctor is
not automatically qualified to provide expert testimony on every medical
question, and an expert must truly have specialized knowledge as to the very
matter on which he proposes to provide an opinion.  See Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 719 (Tex. 1998); see also Broders,
924 S.W. 2d at 152–53.  We agree, but our
reasoning in this case is not inconsistent with the analysis in Gammill and Broders.  We have previously held that a physician may be qualified to provide
opinions although he is not a specialist in the particular branch of medicine
at issue.  Blan v. Ali, 7 S.W.3d 741, 745 (Tex. App.—Houston [14th
Dist.] 1999, no pet.).  A physician may testify regarding the standard of care
for physicians engaged in another specialty if the specialties are intertwined
and he works closely with other specialists in that same field. Id.  Moreover,
a physician may provide expert testimony if he has practical knowledge regarding
the usual and customary practice under circumstances similar to those
confronted by the defendant physician.  Id.  In Kelly v. Rendon, 255
S.W.3d 665, 672–74 (Tex. App.—Houston [14th Dist.] 2008, no pet.), we rejected
the contention that only a plastic surgeon could opine regarding the standard of
care for a plastic surgeon. 255 S.W.3d at 672–74.  Instead, we focused on whether
the physician was practicing medicine and rendering medical care relevant to
the claim.  Id. at 674.   

            Third, citing Thomas v. Alford, 230
S.W.3d 853, 860 (Tex. App.—Houston [14th Dist.] 2007, no pet.), Dr. Reardon
contends Dr. Seaworth is not qualified to provide an expert opinion regarding
causation because he does not have knowledge or experience sufficient to
determine whether a different treatment would have prevented the damages. 
However, Thomas is distinguishable because the court concluded that a
radiologist was disqualified because he did not have the requisite education,
training or experience to provide an expert opinion regarding cancer treatment. 
Id.  Here, Dr. Seaworth has demonstrated he has the education, training,
and experience sufficient to provide expert opinions regarding
misidentification of coronary arteries.

In sum, based on the information in
Dr. Seaworth’s report and curriculum vitae, we hold the trial court did not
abuse its discretion by concluding that Dr. Seaworth has the education,
training, and experience to assist the jury in determining whether Dr.
Reardon’s misidentification of the ramus artery caused Nelson’s damages. 
Accordingly, we overrule Dr. Reardon’s first issue.      

B.        Dr. Seaworth’s Opinion

In support of his second issue, Dr.
Reardon argues Dr. Seaworth’s opinion is “conclusory and based on assumptions
regarding the practice of cardiovascular surgery.” We determine the adequacy of
an expert report by reviewing relevant information within the four corners of
the report.  Palacios, 46 S.W.3d at 878.  A claimant is not required to
marshal all of the evidence supporting his claims in an expert report; however,
an expert must address each element prescribed under the statute. Id.  He
must include a factual narrative sufficient to inform the defendant of the
specific conduct plaintiff has called into question and provide a reasonable basis
for a trial court to conclude the claims have merit.  Id. at 879.  A report
containing only conclusions regarding the standard of care, breach, and
causation does not fulfill these two purposes.  Id.  The expert must
explain the basis for his statements and link his conclusions to facts.  Sanjar
v. Turner, 252 S.W.3d 460, 465 (Tex. App.—Houston [14th Dist.] 2008, no pet.)
(citing Wright, 79 S.W.3d at 52). 

Dr. Reardon argues that Dr.
Seaworth’s report is inadequate because his opinions are based on conjecture
and speculation that (1) Dr. Reardon was not aware of the ramus artery before
surgery and (2) a cardiovascular surgeon would not misidentify the circumflex
and ramus arteries during bypass surgery if the surgeon had seen a drawing
showing the presence of a ramus artery.  Dr. Reardon further argues there is no
basis to conclude that a claim has merit if the expert relies on unsupportable assumptions.
See Murphy v. Mendoza, 234 S.W.3d 23, 28 (Tex. App.—El Paso 2007,
no pet.).  Dr. Reardon argues the assumptions purportedly entertained in this
case are analogous to the opinions in Murphy and Cooper v. Arizpe,
No. 04-07-00734-CV, 2008 WL 940490 (Tex. App.—San Antonio April 9, 2008, pet.
denied) (mem. op.).  In Murphy, the claimant’s experts assumed the defendant
surgeon chose to perform surgery based solely on a faulty pathology report and
that recuts of a biopsy accurately represented the original cuts.  234 S.W.3d
at 27–28.  The assumptions in Murphy were not substantiated by any facts
in the expert report.  Id. at 28.  In Cooper, the claimant’s expert
assumed there was information in a medical chart which was available for review
by the defendant doctors.  Cooper, 2008 WL 940490, at *4.  However, there
was no evidence in the report demonstrating that the information was available
for review.  Id.

Unlike the facts in Murphy and
Cooper, there is substantiation in Dr. Seaworth’s report for his conclusion
that video images and procedure worksheets were not reviewed by Dr. Reardon.  Apparently,
the trial court concluded that Dr. Seaworth’s opinion was not speculation but reasonably
derived from averments in Nelson’s medical
records.  Dr. Seaworth noted that a cardiac-catheterization worksheet generated
before surgery showed the ramus branch.  Moreover, pre-operative video images
revealed the presence of a ramus artery. Dr. Seaworth explained that a notation
of a ramus artery should appear in two places: the pre-operative notes and the
operative or surgical notes.  Dr. Seaworth concluded the pre-operative notes
reflected Dr. Reardon was not aware of the ramus artery, resulting in the
conclusion that he did not review the cardiac-catheterization worksheet before
commencing surgery.  Accordingly, we agree with the trial court’s implicit
finding that Dr. Seaworth fairly summarized the causal relationship between misidentification
of the ramus artery and Nelson’s injuries. See Palacios, 46
S.W.3d at 879.

For all the reasons stated above, we
conclude Dr. Seaworth provided sufficient facts in his report and linked his
causation opinions to those facts and the standard of care for identification
of a ramus artery.  See Kelly, 255 S.W.3d at 679.  Accordingly, we hold
the trial court did not abuse its discretion by denying Dr. Reardon’s motion to
dismiss based on his contention that Dr. Seaworth’s opinions are conclusory and
based on factually-unsupportable assumptions.   We overrule Dr. Reardon’s
second issue.

            In his third issue, Dr. Reardon
complains that the trial court erred by “failing to dismiss
all claims regarding the standard of care during the performance of a coronary artery
bypass surgery.”  Here, Dr. Reardon repeats his arguments regarding Dr.
Seaworth’s qualifications, which we have already rejected. 

Our focus for
determining whether Dr. Seaworth should be allowed to provide expert testimony in
this case remains the same as iterated in our first opinion: “Nelson’s
complaint is that Dr. Reardon performed the admittedly successful bypass on a
healthy artery rather than the artery needing the bypass.”  Reardon,
2008 WL 4390689, at *3.     After reviewing all of the information in Dr.
Seaworth’s report and curriculum vitae, we cannot conclude that the trial court
abused its discretion by denying Dr. Reardon’s motion to dismiss all claims
regarding breach of the standard of care during Nelson’s surgery. The trial
court’s order appropriately precludes Dr. Seaworth from providing testimony
regarding Dr. Reardon’s failure to perform surgical techniques designed to
identify the correct artery.[1] 
We interpret the order as precluding any testimony regarding such surgical techniques,
including standards of care and causation of damages resulting from failure to
perform surgical procedures calculated to identify the ramus artery.  We do not
interpret the trial court’s order to preclude Dr. Seaworth from providing
testimony regarding non-surgical methods for identifying the ramus artery
whether before or during cardiovascular surgery.  Accordingly, we overrule Dr.
Reardon’s third issue.

We affirm the trial court’s order.

            

                                                                                                                                                                                                                                    

                                                            /s/        Charles
W. Seymore

                                                                        Justice

 

Panel consists of Chief
Justice Hedges and Justices Seymore and Sullivan.

 

 









[1] Dr. Reardon raises multiple
concerns about Dr. Seaworth’s qualifications to opine regarding standards of
care for a cardiovascular surgeon “during the surgery.”  We agree with Dr.
Reardon’s contention that Dr. Seaworth is not qualified to render opinions
regarding standards of care for a cardiovascular surgeon relative to failure to
perform or negligent performance of surgical procedures calculated to identify
the ramus artery.  However, we see no reason to modify the trial court’s order
because the same testimony is excluded, based on the trial court’s conclusion
that Dr. Seaworth failed to identify any surgical procedure that Dr. Reardon
failed to perform.