Miguel HERNANDEZ,
M.D., Petitioner,

v.

Julious EBROM and Richard
Hunnicutt, Respondents.

No. 07–0240.

Supreme Court of Texas.

Argued Oct. 15, 2008.

July 3, 2009.

Ronald G. Hole, Hole & Alvarez, L.L.P., McAllen, TX, for Petitioner.

Richard W. Hunnicutt III, Law offices of David McQuade Leibowitz, Michael Don Joy II, San Antonio, TX, for Respondent.

Justice JOHNSON delivered the opinion of the Court, in which Justice HECHT, Justice WAINWRIGHT, Justice BRISTER, Justice GREEN, and Justice WILLETT joined.

A defendant in a health care liability claim may appeal from the interlocutory order denying its objection to the plaintiff's expert report. The statutes authorizing the defendant's objection and appeal do not impose consequences if an interlocutory appeal is not pursued. In this case, we consider whether a defendant health care provider's failure to challenge the adequacy of an expert report by interlocutory appeal precludes a challenge of the report by appeal from a final judgment when the plaintiff later nonsuits before trial. The court of appeals held it does; we hold it does not. We reverse and remand to the court of appeals.

## I. Background

Dr. Miguel Hernandez, a member of McAllen Bone and Joint Clinic, performed surgery on Julious Ebrom's knee. Ebrom experienced complications, filed a health care liability suit against Dr. Hernandez and the clinic, and timely provided the required expert report. *See* Tex. Civ. Prac. & Rem.Code § 74.351(a).

Dr. Hernandez and the clinic filed a motion to dismiss, asserting that the report was deficient because no curriculum vitae for the expert making the report was submitted, the report was conclusory, and it did not mention either defendant. Both defendants sought recovery of their attorney's fees and costs. *See id.* § 74.351(b)(1). The trial court granted the motion as to the clinic but denied it as to Dr. Hernandez. Six months later, and before trial, Ebrom filed notice of nonsuit. The trial court dismissed the case with prejudice. Following entry of the final judgment of dismissal, Dr. Hernandez appealed the trial court's denial of his earlier motion to dismiss. He re-urged his contention that Ebrom's expert report was deficient and sought his attorney's fees.

■ The court of appeals dismissed the appeal for lack of jurisdiction. 289 S.W.3d 332, 2007 WL 416538. It held that the order denying the motion to dismiss was rendered moot by the subsequent nonsuit and order of dismissal. *Id.* at 332. The appeals court relied on two cases we have since reversed: *Villafani v. Trejo*, No. 13–04–449–CV, 2005 WL 2461821 (Tex.App.-Corpus Christi Oct.6, 2005), *rev'd*, 251 S.W.3d 466 (Tex.2008), and *Barrera v. Rico*, No. 13–04–480–CV, 2005 WL 1693698 (Tex.App.-Corpus Christi July 21, 2005), *rev'd per curiam*, 251 S.W.3d 519 (Tex.2008). We held in those cases that a health care provider may appeal the trial court's denial of a motion for sanctions and dismissal despite a nonsuit, as "the purpose of the sanctions ... survive[s] [the plaintiff's] nonsuit." *Villafani*, 251 S.W.3d at 471; *see also Barrera*, 251 S.W.3d at 520. Under *Villafani*, Ebrom's assertion that the nonsuit rendered Dr. Hernandez's subsequent appeal moot is invalid.

However, Ebrom also asserts that because Dr. Hernandez failed to pursue an interlocutory appeal, his complaints have been waived. *See* TEX. CIV. PRAC. & REM. CODE §§ 51.014(a)(9), 74.351.[1] Dr. Hernandez argues that because the plain language of the statute says an interlocutory appeal "may" be taken from an order denying a challenge to an expert report, an interlocutory appeal is permitted but not mandated. *See id.* § 51.014(a).

We agree with Dr. Hernandez. His failure to pursue an interlocutory appeal did not waive the right to challenge the order after Ebrom nonsuited and final judgment was entered.

## II. Discussion

■ Under the Medical Liability Insurance Improvement Act (MLIIA) as it applies to this case, a health care liability claimant must serve an expert report on the defendant provider within 120 days of filing suit. *Id.* § 74.351(a). Each health care defendant whose conduct is implicated in the report may object to the report's sufficiency. *Id.* However, the objection must be made "not later than the 21st day after the date it was served, failing which all objections are waived." *Id.* If a timely and sufficient report is not served, the trial court must award the provider its attorney's fees and costs and dismiss the case with prejudice. *Id.* § 74.351(b).

■ Generally, appeals may only be taken from final judgments, *Ogletree v. Matthews*, 262 S.W.3d 316, 319 n. 1 (Tex. 2007), and an order denying a health care defendant's objection to an expert report is not a final judgment. However, section 51.014(a)(9) of the Texas Civil Practice and Remedies Code provides that a person

"may" appeal from an interlocutory order that "denies all or part of the relief sought by a motion under Section 74.351(b)."

■ In construing statutes, "our primary objective is to ascertain and give effect to the Legislature's intent." *City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex.2006). If the Legislature provides definitions for words it uses in statutes, then we use those definitions in our task. *See* TEX. GOV'T CODE § 311.011(b). We give effect to legislative intent as it is expressed by the statute's language and the words used, unless the context necessarily requires a different construction or a different construction is expressly provided by statute. *See id.* § 311.016; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex.2008). Unambiguous statutory language is interpreted according to its plain language unless such an interpretation would lead to absurd results. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex.1999).

According to the Code Construction Act, " '[m]ay' creates discretionary authority or grants permission or a power." TEX. GOV'T CODE § 311.016(1). In this case, Ebrom does not contend that some context or express language in section 51.014 makes it necessary to read "may" differently than how it is defined. Nor do we see in the statute either express language or a context that necessitates construing "may" as imposing a duty as opposed to creating authority or granting permission or a power.

In other cases where this Court has construed "may," we considered the plain language of the statutes. For example, in *Dallas County Community College Dis-*

---

1. *Villafani* also involved an appeal from a final judgment after a nonsuit. However, *Villafani* was filed prior to enactment of section 51.014(a)(9) allowing interlocutory appeal of such orders. *See Villafani*, 251 S.W.3d at 468 ("Such an interlocutory appeal was not available under the version of the MLIIA applicable to this case.").

*trict v. Bolton,* 185 S.W.3d 868, 873 (Tex. 2005), the issue was whether a statute prohibited the collection of technology fees if they were not used for bond repayment when the statute provided such fees collected by public junior colleges "may be pledged to the payment of [revenue] bonds." The Court recognized "[w]e cannot disregard the Legislature's choice of language in providing that the authorized fees *'may* be pledged to the payment' of revenue bonds rather than requiring that they *must* or *shall* be so pledged." *Id.* We concluded that " 'may' and 'shall' mean different things, and there is no clear indication from the Legislature that it intended otherwise." *Id.* at 874; *see also Mid–Century Ins. Co. of Tex. v. Ademaj,* 243 S.W.3d 618, 623 (Tex.2007) (statute providing the insurance commissioner "may" give consideration to certain expenses was permissive and did not compel him to do so).

The Legislature *authorized* health care providers to pursue interlocutory appeals from trial court denials of challenges to plaintiffs' expert reports, but we see no indication that the Legislature effectively *mandated* interlocutory appeals by providing that if no appeal was taken, then the health care provider waived the right to challenge the report under all circumstances. Neither section 51.014(a)(9) nor section 74.351 indicates there are consequences if an appeal from the interlocutory order is not pursued. *Cf. Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 495 (Tex. 2001) ("To determine whether a timing provision is mandatory, we first look to whether the statute contains a noncompliance penalty."). The statute providing for interlocutory appeals states only that "[a] person may appeal from" certain specified interlocutory orders. Tex. Civ. Prac. & Rem.Code § 51.014. And section 74.351, which requires expert reports and allows health care providers to challenge them, does not reference the question of appeal, interlocutory or otherwise, from such a challenge or the ruling on it.

Ebrom relies on *Bayoud v. Bayoud,* 797 S.W.2d 304 (Tex.App.-Dallas 1990, writ denied), to support his argument that failure to pursue an interlocutory appeal waives the issue. In *Bayoud,* the appellant challenged the trial court's grant of a temporary injunction enjoining a receiver from selling a company's assets on the ground that the trial court failed to require the appellant, who had requested the injunction, to file a bond. *Id.* at 308. The court held that the appellants "lost their right to complain of the validity of the bond or the injunction order as they should have appealed within proper time limits after the grant of the injunction." *Id.* at 312 (citing Tex. Civ. Prac. & Rem.Code § 51.014(a)(4)). But *Bayoud* was not addressing the type of interlocutory appeal at issue here.

Appeals of some interlocutory orders become moot because the orders have been rendered moot by subsequent orders. *See, e.g., Richards v. Mena,* 820 S.W.2d 372, 372 (Tex.1991) (the appeal of a temporary injunction was rendered moot by the rendering of a permanent injunction); *Lincoln Prop. Co. v. Kondos,* 110 S.W.3d 712, 715 (Tex.App.-Dallas 2003, no pet) (recognizing that the issue of whether the trial court properly granted class certification was rendered moot by the trial court's grant of the defendant's motion for summary judgment). But as to the statute involved here, we recently held that a motion to dismiss and for sanctions is not rendered moot by a nonsuit. *Villafani,* 251 S.W.3d at 471.

Appellate review in this case would allow Dr. Hernandez to pursue a right given to him by the Legislature—the statutory right to potential reimbursement for certain of his attorney's fees and costs. *See* Tex. Civ. Prac. & Rem.Code § 74.351(b)(1).

Precluding defendants from asserting that statutory right would dilute the deterrent value of the statute. *See Villafani*, 251 S.W.3d at 470 ("Allowing defendants to seek sanctions under the MLIIA for attorney's fees and dismissal with prejudice deters claimants from filing meritless suits."); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex.2001) ("The Legislature has determined that failing to timely file an expert report, or filing a report that does not evidence a good-faith effort to comply with the definition of an expert report, means that the claim is either frivolous, or at best has been brought prematurely. This is exactly the type of conduct for which sanctions are appropriate." (citations omitted)).

Further, holding that failing to take an interlocutory appeal forfeits the right to statutory sanctions could induce defendants who might not otherwise take an interlocutory appeal from denials of their motions to do so in order to avoid losing any chance of recovering sanctions. Placing defendants in such a position surely would slow down the process of disposing of health care liability claims by increasing interlocutory appeals and would increase costs of resolving the claims. That would run counter to one purpose for which the MLIIA was enacted. *See* Act of June 2, 2003, 78th Leg., R. S., ch. 204, § 10.11(b)(2), 2003 Tex. Gen. Laws 847, 884 (stating that one purpose of the MLIIA was to decrease the cost of health care liability claims).

### III.  Response to the Dissent

The dissent agrees that section 51.014(a)(9) provides a defendant the right to an interlocutory appeal and queries whether the statute contemplates the appeal's immediate exercise. The question, however, is not whether the statute con-templates immediate exercise of the right to interlocutory appeal, but whether the statute provides that a defendant loses its statutory right to seek attorney's fees and costs if an immediate interlocutory appeal is not taken.

Prior to the 2003 amendments, the statute provided no time limit for filing objections to the report, as we held in *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex.2003) (per curiam). There, the defendant challenged the expert report more than 600 days after the plaintiff served it. *Id.* at 155. The trial court granted the motion to dismiss over the plaintiff's assertion that the defendant doctor had waived any challenge to the report by waiting so long. *Id.* We noted that the statute did not "impose a deadline for a health care provider to file a motion to dismiss" and held that the doctor's actions were not consistent with an intent to waive his right to challenge the report. *Id.* at 156.

Section 74.351 now imposes time limits for both filing expert reports and objecting to them. Tex. Civ. Prac. & Rem.Code § 74.351(a). Section 74.351(a) specifies that reports must be served no later than 120 days after the original petition is filed and that objections to the sufficiency of such reports must be made within twenty-one days after the report is served. Consequences result if either of those deadlines are missed. *See id.* § 74.351(b). If the report is not timely filed, the suit must be dismissed with attorney's fees and costs awarded to the defendant. *See id.* If a defendant fails to timely object to a report, any objection is waived. *See id.* § 74.351(a).

The time limitation on filing objections was added by amendment in 2003 when the Legislature also authorized interlocutory appeals from orders denying defen-

dants' objections to reports.[2] In contrast to the specific time limits the Legislature set in section 74.351(a) for filing reports and objecting to them when it amended the statute in 2003, it provided no limitation in section 74.351(b) for appealing from final judgments and challenging the interlocutory orders denying objections to reports. We presume the Legislature placed into the statute words it intended to be there and that it purposefully omitted words not found there. *In re M.N.,* 262 S.W.3d 799, 802 (Tex.2008). When the Legislature has prescribed certain time limits and procedures, it is not our prerogative to add further limitations to them.

Finally, the dissent queries whether the same rule that applies to this case will apply following a trial on the merits and a final judgment for the plaintiff based on the trial. The dissent suggests that because section 74.351(b) provides the trial court "shall" dismiss an action for failure to comply with the expert report requirement, dismissal for an inadequate report would be required even after a final judgment for the plaintiff. We do not believe the statute contemplates such a result for at least two reasons.

First, by requiring timely expert reports, the Legislature intended to reduce frivolous claims; it indicated no intent to preclude meritorious claims. If a full trial occurs and the plaintiff prevails after introducing evidence of the appropriate standard of care for the defendant, the defendant's breach of that standard, and a causal relationship between the breach and the plaintiff's damages, then the claim could not sensibly be classified as frivolous. Construing the statute to require post-trial dismissal of such a claim because of an earlier inadequate report would be construing the statute to yield an unjust and nonsensical result—one we presume the Legislature did not intend. *See* TEX. GOV'T CODE § 311.021(3) ("In enacting a statute, it is presumed that . . . a just and reasonable result is intended."); *City of Rockwall,* 246 S.W.3d at 626 (noting that a statute will not be construed to yield an absurd result); *McKinney v. Blankenship,* 154 Tex. 632, 282 S.W.2d 691, 698 (1955) ("Unless there is no alternative, a statute will not be interpreted so as to lead to a foolish or absurd result.").

■ Second, the situation referenced by the dissent is similar to the situation involving the denial of a motion for summary judgment. Texas Rule of Civil Procedure 166a(c) states that a judgment "shall" be rendered when a motion for summary judgment establishes the movant is entitled to judgment as a matter of law. As the dissent acknowledges, a party may not, after trial and an unfavorable judgment, prevail on a complaint that the party's motion for summary judgment should have been granted. Likewise, we do not see how section 74.351(b) could have been intended to require dismissal of the action because of an inadequate expert report after a full trial and introduction of evidence establishing the appropriate standard of care, breach of the standard, and a causal relationship of the breach to the plaintiff's damages. As stated above, such a result would be unjust and nonsensical— one we presume the Legislature did not intend.

## IV. Conclusion

The court of appeals had jurisdiction over Dr. Hernandez's appeal and erred by dismissing it. We reverse the court of

---

**2.** *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 1.03, 10.01, 2003 Tex. Gen. Laws 847, 849, 875.

appeals' judgment and remand the case to that court for it to consider the merits of the appeal.

Chief Justice JEFFERSON filed a dissenting opinion, in which Justice O'NEILL and Justice MEDINA joined.

Chief Justice JEFFERSON, joined by Justice O'NEILL and Justice MEDINA, dissenting.

The Court proposes a categorical rule: a health care provider may challenge an order denying his motion to dismiss a claim due to the inadequacy of an expert report either in an interlocutory appeal or after final judgment. And then it proposes the opposite: a provider may *not* appeal an order denying his motion to dismiss if the plaintiff establishes at trial "the appropriate standard of care, breach of the standard, and a causal relationship of the breach to the plaintiff's damages." 289 S.W.3d at 321. As to the first holding, the Court relies on the statute's plain language. Because "[n]either section 51.014(a)(9) nor section 74.351 indicate there are consequences if an appeal from the interlocutory order is not pursued," the Court reasons, a provider who elects not to appeal the trial court's order denying dismissal may complain after final judgment. *Id.* at 319. "When the Legislature has amended the statute to prescribe certain time limits and procedures, it is not our prerogative to add further limitations to them." *Id.* at 321.

But the Court adds a "further limitation" in the next breath: a provider loses his statutory right to dismissal if the plaintiff prevails at trial. *Id.* at 321. In other words, "may appeal" means "must appeal" in that instance. This transmutation depends not on the statute's plain language, but on the Court's belief that an exception is required when the plaintiff has secured a judgment establishing malpractice. The

Court limits its exception to judgments in which the plaintiff wins after a full trial; a successful *defendant* could resurrect his complaint about the inadequate expert report, and make the plaintiff pay his fees and costs, despite his failure to avail himself of an interlocutory appeal when available. While the Court recognizes that the Legislature's goals were threefold—reducing frivolous claims, preserving meritorious ones, and decreasing the cost of health care litigation—its rule furthers none of them. The question this case presents deserves more thoughtful consideration about the Legislature's broader mission, which must inform our construction of the right to an interlocutory appeal in this context. *See City of Marshall v. City of Uncertain,* 206 S.W.3d 97, 105 (Tex.2006) ("[O]ur primary objective is to ascertain and give effect to the Legislature's intent."). Because the Court's holding contradicts that mission, I respectfully dissent.

Interlocutory appeals are disruptive, time-consuming, and expensive. *See In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 138 (Tex.2004) (noting "the disruption and burden of interlocutory appeal"); 19 GEORGE C. PRATT, MOORE'S FEDERAL PRACTICE § 201.10[1] (3d ed. 2009) ("The purposes of the final judgment rule are to avoid piecemeal litigation, to promote judicial efficiency, and to defer to the decisions of the trial court."); 15 A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3907, at 269 (2d ed. 1992) ("When courts attempt to explain the policies that underlie the final judgment rule, ... [they] speak of 'efficiency,' protecting the role of the trial judge, and the need to avoid such evils as interference with the trial court, deciding unnecessary issues, and deliberate delay or harassment."); *cf.* FED. R.CIV.P. 23 advisory committee's note

(1998) (observing that ten-day window for seeking interlocutory review in federal cases involving class certification "is designed to reduce the risk that attempted appeals will disrupt continuing proceedings"); *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 461 (Tex.2008) (noting that "[a]ppellate courts cannot afford to grant interlocutory review of every claim that a trial court has made a pre-trial mistake").

There are instances, however, when the Legislature deems a right or remedy so important that its vindication need not wait until the case concludes. Examples are strewn throughout Texas statutes [1]; the one at issue today resides among several others in section 51.014 of the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM.CODE § 51.014(a)(9). Section 51.014 uses the permissive term "may" in conferring the right to an interlocutory appeal. *Id.* § 51.014(a). In the Court's view, that term governs the disposition in this case. Because the defendant is not *required* to appeal an interlocutory order, he may postpone his complaint until the ruling merges with a final judgment. This approach is easy to understand but has obvious flaws.

For example, while the same plain language says that an order granting a temporary injunction "may" be appealed, it *must* be appealed before final judgment if the enjoined party wants relief. By its nature, a temporary injunction ceases to exist when the trial court signs a final judgment. An order appointing a receiver becomes the basis of commercial transactions with third parties. If a challenge to that order "may" await the final judgment

years later, are those transactions dissolved when the receiver is removed? A media defendant "may" immediately appeal the denial of its motion for summary judgment. If it foregoes that right and loses at trial, can an appellate court render a take-nothing judgment because the trial court previously denied a motion for summary judgment that it should have granted?

It is not enough to say that because "may"—which applies to every appeal in section 51.014(a)—is permissive, a party can always elect to appeal either immediately or after final judgment. *See Ray Malooly Trust v. Juhl*, 186 S.W.3d 568, 570 n. 3 (Tex.2006) (noting that " '[in] dozens of cases, courts have held "may" to be synonymous with "shall" or "must" ' ") (quoting BLACK'S LAW DICTIONARY 1000 (8th ed.2004)); *see also Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex.1998) ("Statutes providing that a party 'may recover,' 'shall be awarded,' or 'is entitled to' attorney fees are not discretionary.") (citations omitted). We must also examine the nature of the claim and the right sought to be vindicated. Efficiency, third-party interests, public policy, jurisdiction, a preference for outcomes based on substance—these and other concerns have historically informed the decision whether an interlocutory appeal is lost if not taken immediately. The analysis can be straightforward in a given case, but it may also require a deeper understanding of the purposes interlocutory review was meant to serve. Whether an interlocutory appeal may await final judgment depends on cir-

---

1. *See, e.g.,* TEX CIV. PRAC. & REM CODE § 15.003(c) (authorizing interlocutory appeal of venue rulings in certain cases involving multiple plaintiffs and intervening plaintiffs); *Id.* § 26.051(b) (permitting interlocutory appeal from denial of plea to jurisdiction in a class action if state agency has exclusive or primary jurisdiction of action); TEX. FAM.CODE § 6.507 (recognizing interlocutory appeal for orders appointing receivers); TEX. HEALTH & SAFETY CODE § 574.070 (authorizing accelerated appeal from order requiring court-ordered mental health services).

cumstances that evade the easy fix the Court applies today. We should attempt to discern general principles that will govern future cases, and then determine the scope of the appellate remedy with those principles in mind.

## I

## Background

Until 2003, medical professionals had no right to an interlocutory appeal if a trial court erroneously denied a motion to dismiss the case based on deficiencies in the claimant's expert report. *See, e.g., Villafani v. Trejo,* 251 S.W.3d 466, 468 (Tex.2008). While some courts of appeals granted mandamus relief in that circumstance, entitlement to it was by no means guaranteed. *See In re Woman's Hosp. of Tex., Inc.,* 141 S.W.3d 144, 158 (Tex.2004)(Owen, J., concurring in part and dissenting in part to the denial of mandamus petitions). This Court was ultimately persuaded that, with respect to health care liability claims, public policy required that we reassess our traditional reluctance to intervene in lower court proceedings. *In re McAllen Med. Ctr.,* 275 S.W.3d at 466. The Legislature spoke, in apocalyptic terms, about a "medical malpractice insurance crisis" that had significantly reduced access to health care services and dramatically increased the cost of malpractice insurance in this state. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(a)(5), 2003 Tex. Gen. Laws 847, 884. Medical professionals were subjected to jury trials in frivolous cases, which were "affecting the availability and affordability of health care" and "driving physicians from Texas and patients from medical care they need." *In re McAllen Med. Ctr.,* 275 S.W.3d at 466. And so we recognized a right to immediate mandamus relief when a trial court refuses to dismiss a case in which the expert report is inadequate. *Id.* at 467.

Our holding in *McAllen* was reinforced by legislative action that was similarly designed to accelerate dismissal of frivolous cases. Noting that "the number of health care liability claims" had "increased ... inordinately," the Legislature enacted section 74.351 and granted an accelerated appeal from an order denying a motion to dismiss for failure to file an adequate report. Act of June 2, 2003, 78th Leg., R. S., ch. 204, § 10.11(a)(1), 2003 Tex. Gen. Laws 847, 884. This provision had one goal in mind:

> The obvious intent of this statutory provision was to stop suits that had no merit from proceeding through the courts. The Legislature's hope was, and is, that this would reduce waste of the parties', the courts', and the insurers' time and money, which would favorably impact the cost of insurance to health care providers and thus the cost and availability of health care to patients.

*In re Woman's Hosp. of Tex., Inc.,* 141 S.W.3d at 147 (Owen, J., concurring in part and dissenting in part to the denial of mandamus petitions); *see also* Act of June 2, 2003, 78th Leg., R. S., ch. 204, § 10.11(b)(1), (3), 2003 Tex. Gen. Laws 847, 884 (intent of legislation was to "reduce excessive frequency and severity of health care liability claims through reasonable improvements and modifications in the Texas insurance, tort, and medical practice systems ... in a manner that will not unduly restrict a claimant's rights any more than necessary to deal with the [medical liability insurance] crisis").

## II

## The interlocutory appeal was designed to remove frivolous cases from the judicial system at the earliest opportunity.

It is clear, then, that when the Legislature gave health care providers authority

to appeal an interlocutory order that denies a motion to dismiss, it did so to quickly dispose of frivolous cases that increase the cost of insurance and drive doctors away from Texas. The question here is whether the Court's holding today furthers or frustrates that purpose. *See* TEX. GOV'T CODE § 311.023 (providing that courts may consider "the object sought to be attained" and the "consequences of a particular construction").

The Court and I agree that "may," as it applies to interlocutory appeals under section 51.014(a)(9), " 'creates authority or grants permission or a power.' " 289 S.W.3d at 318 (quoting TEX. GOV'T CODE § 311.016(1)). If the claimant were proposing that a defendant had no right to an interlocutory appeal, we would reject it unanimously. The Court says its holding "would allow Hernandez to pursue a right given him by the Legislature," suggesting that the approach I favor would not. To the contrary, the statute clearly permits a provider to pursue the right if it so chooses. The question is not whether the defendant has the right, but whether the statute contemplates its immediate exercise. Our treatment of this issue must therefore be sensitive to the law's underlying rationale. Those reasons vary according to the nature of the interlocutory appeals section 51.014 permits.

As the Court notes, the oldest interlocutory appeal, that from an order creating or dissolving a temporary injunction, must either be taken immediately or lost, because a temporary injunction, by its very nature, ceases to exist when the controversy has proceeded to final judgment. *See Janus Films, Inc. v. City of Fort Worth,* 163 Tex. 616, 358 S.W.2d 589, 589 (1962) ("The purpose of a temporary injunction is to preserve the status quo of the subject matter of the suit pending a final trial of the case on its merits."). Accordingly, even though

section 51.014 says a party "may appeal" a temporary injunction, the opportunity to review that order is lost if not taken immediately.

Courts of appeals have held that orders appointing receivers may be challenged by interlocutory appeal *only*. *Long v. Spencer,* 137 S.W.3d 923, 926 (Tex.App.-Dallas 2004, no pet.) (holding parties must challenge appointment of receiver by interlocutory appeal or complaint is waived); *Sclafani v. Sclafani,* 870 S.W.2d 608, 611 (Tex. App.-Houston [1st Dist.] 1993, writ denied); *Benningfield v. Benningfield,* 155 S.W.2d 827, 827 (Tex.Civ.App.-Austin 1941, no writ); *McFarlane v. Greenameyer,* 199 S.W. 304, 305 (Tex.Civ.App.-Galveston 1917, no writ). As one court explained:

> [Permitting appeal from final judgment] would mean that a party could rightfully attempt to set aside an order of receivership in an appeal regardless of how long ago the receivership order was entered. The setting aside of an order of receivership has "the effect of nullifying all intervening acts of the receiver ... or, at least, of raising serious questions concerning the validity of such intervening acts." Allowing the vacation of a receivership at any time after its creation would work undue hardship on third parties who have dealt in good faith with the receiver. Furthermore, an unlimited time to appeal would mean that the order of receivership would *never* be beyond challenge, and thus never attain the finality upon which the parties, the receiver, and those who have transacted with the receiver, are entitled to depend.

*Sclafani,* 870 S.W.2d at 611 (internal citation omitted). Again, section 51.014 says a party "may appeal" these orders, but courts recognize that, in these circumstances, review cannot await final judgment. This is not unlike the rule gov-

erning interlocutory appeals in probate proceedings, in which "[t]he need to review 'controlling, intermediate decisions before an error can harm later phases of the proceeding'" justifies an exception to the "one final judgment" rule. *De Ayala v. Mackie,* 193 S.W.3d 575, 578 (Tex. 2006) (quoting *Logan v. McDaniel,* 21 S.W.3d 683, 688 (Tex.App.-Austin 2000, pet. denied)).

Similarly, the right to complain of a trial court's denial of a media defendant's motion for summary judgment on certain defamation claims may well be lost if not challenged by interlocutory appeal, *see* TEX. CIV. PRAC. & REM.CODE § 51.014(a)(6), as it is settled in both state and federal court that the denial of a motion for summary judgment may not be challenged on appeal from final judgment following trial, *see Johnson v. Sawyer,* 120 F.3d 1307, 1316 (5th Cir.1997) ("We have held repeatedly that orders denying summary judgment are not reviewable on appeal where final judgment adverse to the movant is rendered on the basis of a subsequent full trial on the merits."); *Glaros v. H.H. Robertson Co.,* 797 F.2d 1564, 1573 (Fed.Cir.1986); *Ackermann v. Vordenbaum,* 403 S.W.2d 362, 365 (Tex.1966) (holding that to allow an appeal of the denial of a motion for summary judgment following a subsequent dismissal or full trial on the merits "could result in judgments which would be patently unjust"). We have noted that:

> It would seem incongruous for a court, upon finding that a judgment following a full and complete conventional trial should be reversed because of the admission of improper evidence, to then review the action of a trial court in overruling a summary judgment, particularly if it appears from the evidence adduced upon the conventional trial that there were genuine issues of fact in the case even though the summary judg-

ment record might not reflect this situation because of an incomplete development of the facts.

*Id.* at 365 (noting that many of the same concerns would arise if the final judgment appealed from was one of dismissal). The Fifth Circuit has explained the justification for this rule:

> It makes no sense whatever to reverse a judgment on the verdict where the trial evidence was sufficient merely because at summary judgment it was not. As we noted in *Woods v. Robb,* 171 F.2d 539 (5th Cir.1948): "The saving of time and expense is the purpose to be attained by a summary judgment in a proper case. When in due course the final trial is had on the merits it becomes the best test of the rights of the movant. If he wins on trial he has his judgment. If he loses on a fair trial it shows that he ought not to have any judgment." *Id.* at 541. For all of these reasons, we are firmly convinced that the better course is to decline to review the district court's denial of motions for summary judgment when the case comes to us on the movant's appeal following adverse judgment after full trial on the merits.

*Black v. J.I. Case Co.,* 22 F.3d 568, 572 (5th Cir.1994) (footnote omitted).

By contrast, cases involving jurisdictional matters generally follow a different rule. We have implicitly concluded that the failure to pursue the interlocutory appeal given to governmental entities whose immunity-based pleas to the jurisdiction are denied does not prevent them from raising the same issue on appeal from a final judgment. *See, e.g., State ex rel. State Dep't of Highways and Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 331 (Tex.2002) (concluding, on appeal from final judgment, that governmental immunity barred claim and rendering take-nothing judg-

ment despite trial court's interlocutory denial of plea to the jurisdiction on that ground); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 412 (Tex.1997) (same); *see also* TEX. CIV. PRAC. & REM.CODE § 51.014(a)(8).

This rule would presumably extend to interlocutory orders involving the trial court's personal jurisdiction over a party. The prevailing view is that an order granting or denying a special appearance may be challenged after final judgment. *See GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 866–67 (Tex.App.-Austin 2008, no pet.) (holding that appellate jurisdiction to review special appearance rulings was not limited solely to interlocutory appeal authorized by section 51.014(a)(7)); *Canyon (Australia) Pty., Ltd. v. Maersk Contractors, Pty., Ltd.*, No. 08–00–00248–CV, 2002 WL 997738, at *4 (Tex.App.-El Paso May 16, 2002, pet. denied) (concluding that interlocutory appeal was not "mandatory" and trial court's special appearance grant could be reviewed on appeal from final judgment); *but see Matis v. Golden*, 228 S.W.3d 301, 305 (Tex.App.-Waco 2007, no pet.) (concluding that challenge to order denying special appearance, raised for the first time on appeal from final judgment, was untimely because parties failed to bring an interlocutory appeal); *see also* TEX.R. CIV. P. 120a(1) (providing for special appearances to object to jurisdiction "over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State").

And while we have not considered the issue, federal courts have concluded that a party's failure to seek interlocutory review of an order granting or denying class certi-

fication does not bar the same complaint on final judgment. *See, e.g., Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 199 n. 12 (3d Cir.2008) (concluding that "plaintiffs may appeal the denial of class certification once a final judgment has been entered"); *Asher v. Baxter Int'l, Inc.*, 505 F.3d 736, 740 (7th Cir.2007) (noting that if Rule 23(f)'s brief opportunity for interlocutory review passes, "the entitlement to review at the end of the case remains"); *Jenkins v. BellSouth Corp.*, 491 F.3d 1288, 1292 (11th Cir.2007); *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1192 (10th Cir.2006); *Gary v. Sheahan*, 188 F.3d 891, 892 (7th Cir. 1999); *see also Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 664 n. 6 (Tex. 2004) (noting that federal decisions and authorities interpreting current federal class action requirements are persuasive authority in Texas courts). The federal interlocutory review provision was adopted to address countervailing concerns:

> An order denying certification may confront the plaintiff with a situation in which the only sure path to appellate review is by proceeding to final judgment on the merits of an individual claim that, standing alone, is far smaller than the costs of certification. An order granting certification, on the other hand, may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability. These concerns can be met at low cost by establishing in the court of appeals a discretionary power to grant interlocutory review in cases that show appeal-worthy certification issues.

FED.R.CIV.P. 23 advisory committee's note (1998).[2]

**2.** It is worth noting, though, that class certification cases brought in Texas courts are resolved primarily through interlocutory appeals, because certification is often "the

whole ball of wax." Victor E. Schwartz, Mark A. Behrens & Leah Lorber, *Tort Reform Past, Present and Future: Solving Old Problems and Dealing with "New Style" Litigation,*

## III

### An expert report is a means to determine quickly if the claim has arguable merit.

In cases involving health care liability claims, the expert report serves as a screening mechanism to weed out frivolous suits. The report is not admissible in evidence; may not be used in a deposition, trial, or other proceeding; and may not even be referred to by any party during the course of the action for any purpose. TEX. CIV. PRAC. & REM.CODE § 74.351(k). If a trial court denies a provider's motion to dismiss, the Legislature authorized a narrow window of interlocutory review; once that review is complete, parties know what, if anything, remains at stake. *Cf. Gary*, 188 F.3d at 893 (discussing Fed.

R.Civ.P. 23(f) interlocutory review of orders involving class certification and noting that it "permit[s] the parties to proceed in confidence about the scope and stakes of the case thereafter"). Our precedent contemplates an interlocutory resolution of these matters. *See, e.g., Leland v. Brandal*, 257 S.W.3d 204, 205 (Tex.2008) (holding that when elements of expert report are deficient, either by trial court or on appeal, an appellate court may remand the case so that the trial court can consider whether to grant a thirty-day extension to cure the deficiency). The number of cases decided on interlocutory appeal—both affirming and reversing a trial court's refusal to dismiss—is testimony to the fact that providers are utilizing this remedy and that it is working as intended.[3] *See id.* at

27 WM. MITCHELL L.REV. 237, 264 (2000) (quoting Eddie Curran, *Critics Blast Alabama Judges' "Drive By" Rulings*, MOBILE REG., Dec. 28, 1999, at 9A).

3. There are far too many to comfortably cite, so I have collected only a sampling of some of the cases decided in 2008. *See, e.g., Young v. Pinto*, No. 09–08–299 CV, 2008 WL 4998346, at *8–9 (Tex.App.-Beaumont Nov.26, 2008, no pet.) (mem.op.) (affirming trial court's denial of motion to dismiss); *Azle Manor, Inc. v. Vaden*, No. 2-08-115–CV, 2008 WL 4831408, at *10 (Tex.App.-Fort Worth Nov.6, 2008, no pet) (mem.op.) (affirming in part and reversing in part trial court's denial of motion to dismiss); *Hendrick Med. Ctr. v. Hewitt*, No. 11–07–00333–CV, 2008 WL 4439843, at *11 (Tex.App.-Eastland Oct.2, 2008, no pet.) (mem.op.) (reversing trial court's judgment, rendering judgment dismissing claims, and remanding for calculation of attorney's fees, because trial court abused its discretion in denying motion to dismiss); *Reardon v. Nelson*, No. 14–07–00263–CV, 2008 WL 4390689, at *7 (Tex.App.-Houston [14th Dist.] Sept. 30, 2008, no pet.) (mem.op.) (reversing trial court's order denying motion to dismiss and remanding for consideration of whether to grant extension); *Butters v. Noyola*, Nos. 13–07–00713–CV, 13–08–00184–CV, 13–08–00183–CV, 13–08–00038–CV, 13–07–00765–CV, 13–08–00203–CV, 2008 WL 3984168, at

*7 (Tex.App.-Corpus Christi Aug.29, 2008, no pet.) (mem.op.) (same); *Heritage Gardens Healthcare Ctr. v. Pearson*, No. 05–07–00772–CV, 2008 WL 3984053, at *7 (Tex.App.-Dallas Aug.29, 2008, no pet.) (mem.op.) (affirming trial court's denial of motion to dismiss); *Rivera v. Loweree*, 281 S.W.3d 515, 521 (Tex. App.-El Paso 2008, pet. denied) (same); *Troeger v. Myklebust*, 274 S.W.3d 104, 105 (Tex. App.-Houston [14th Dist.] 2008, pet. denied) (same); *Wilson N. Jones Mem'l Hosp. v. Ammons*, 266 S.W.3d 51, 53 (Tex.App.-Dallas 2008, pet. filed) (reversing trial court's judgment, rendering judgment dismissing claims, and remanding for calculation of attorney's fees, because trial court abused its discretion in denying motion to dismiss); *Ctr. for Neurological Disorders v. George*, 261 S.W.3d 285, 296 (Tex.App.-Fort Worth 2008, pet. denied) (affirming in part and reversing in part trial court's order denying motion to dismiss); *Marvin v. Fithian*, No. 14–07–00996–CV, 2008 WL 2579824, at *6 (Tex.App.-Houston [14th Dist.] July 1, 2008, no pet.) (mem.op.) (affirming trial court's order denying motion to dismiss); *Merritt v. Williamson*, No. 01–08–00293–CV, 2008 WL 2548128, at *8 (Tex. App.-Houston [1st Dist.] June 26, 2008, no pet.) (mem.op.) (reversing trial court's order denying motion to dismiss, and remanding for consideration of whether extension would be appropriate); *Schmidt v. Dubose*, 259 S.W.3d 213, 219 (Tex.App.-Beaumont 2008, no pet.)

210 (Brister, J., dissenting) (noting that "a substantial part of the state's appellate resources are already being expended reviewing preliminary expert reports").

When a claim lacking merit is immediately dismissed, and the claimant obliged to pay attorney's fees, future such claims are deterred. It is shortsighted, then, to think that the Legislature was concerned only about particular cases. The larger goal, revealed time and again in legislative findings and statutory amendments, is to muster not only claimants and defendants, but also trial and appellate courts, in a war against the crisis that ensues when the system allows frivolous cases to fester. The motive to bring these cases to fruition right away is lost if postponed until damage to the health care system has already been realized.

It is no less myopic to presume that the Legislature built a one-way ratchet to protect only the health care industry. The Legislature's directive that the civil justice system repel weak claims stands alongside its insistence that malpractice be penalized. The issue is one of incentives. The claimant is encouraged to bring only those claims that have merit because not only will those found lacking be dismissed, but

(holding that trial court did not err in denying motion to dismiss); *Woofter v. Benitez,* No. 01–06–01123–CV, 2008 WL 2466223, at *2 (Tex.App.-Houston [1st Dist.] June 19, 2008, no pet.) (mem.op.) (reversing trial court's order denying motion to dismiss and remanding for consideration of extension request); *Eikenhorst v. Wellbrock,* No. 01–07–00459–CV, 2008 WL 2339735, at * 11 (Tex.App.-Houston [1st Dist.] June 5, 2008, no pet.) (mem.op.) (affirming trial court's order denying motion to dismiss); *Springer v. Johnson,* 280 S.W.3d 322, 334 (Tex.App.-Amarillo 2008, no pet.) (same); *San Jacinto Methodist Hosp. v. Bennett,* 256 S.W.3d 806, 819 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (affirming trial court's order denying motion to dismiss); *Educare Cnty. Living Corp. v. Rice,* No. 05–07–00964–CV, 2008 WL 2190988, at *3–4 (Tex.App.-Dallas May 28, 2008, no pet.) (mem.op.) (reversing trial court's order denying motion to dismiss and remanding for consider of extension); *Arboretum Nursing & Rehab. Ctr. of Winnie, Inc. v. Isaacks,* No. 14–07–00895–CV, 2008 WL 2130446, at *8 (Tex. App.-Houston [14th Dist.] May 22, 2008, no pet.) (mem.op.) (affirming trial court's denial of motion to dismiss); *Bogar v. Esparza,* 257 S.W.3d 354, 373 (Tex.App.-Austin 2008, no pet.) (reversing trial court's judgment, rendering judgment dismissing claims, and remanding for calculation of attorney's fees, because trial court abused its discretion in denying motion to dismiss); *Pallares v. Magic Valley Elec. Coop., Inc.,* 267 S.W.3d 67, 75 (Tex. App.-Corpus Christi 2008, pet. denied) (affirming trial court's order denying motion to dismiss); *Rivenes v. Holden,* 257 S.W.3d 332, 341 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) (reversing trial court's judgment, rendering judgment dismissing claims, and remanding for calculation of attorney's fees, because trial court abused its discretion in denying motion to dismiss); *Maris v. Hendricks,* 262 S.W.3d 379, 387 (Tex.App.-Fort Worth 2008, pet. denied) (affirming trial court's order denying motion to dismiss); *Tamtam v. Waiters,* No. 04–07–00398–CV, 2008 WL 1882784, at *5 (Tex.App.-San Antonio Apr.30, 2008, no pet.) (mem.op.) (same); *IHS Acquisition No. 140, Inc. v. Travis,* No. 13–07–481–CV, 2008 WL 1822780, at *9 (Tex. App.-Corpus Christi Apr. 24, 2008, pet. denied) (mem.op.) (same); *Victoria Gardens of Frisco v. Walrath,* 257 S.W.3d 284, 286 (Tex. App.-Dallas 2008, pet. denied) (reversing trial court's judgment and dismissing claims with prejudice); *Greenberg v. Gillen,* 257 S.W.3d 281, 282 (Tex.App.-Dallas 2008, pet. dism'd) (concluding that trial court abused its discretion in denying motion to dismiss); *Univ. of Tex. Med. Branch v. Railsback,* 259 S.W.3d 860, 870 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (affirming in part and reversing in part trial court's order denying motion to dismiss); *CHCA Mainland, L.P. v. Wheeler,* No. 09–07–634 CV, 2008 WL 960798, at *5 (Tex.App.-Beaumont Apr.10, 2008, no pet.) (mem.op.) (affirming trial court's denial of motion to dismiss); *Jones v. King,* 255 S.W.3d 156, 161 (Tex.App.-San Antonio 2008, pet. denied) (reversing trial court's judgment, rendering judgment dismissing claims, and remanding for calculation of attorney's fees, because trial court abused its discretion in denying motion to dismiss).

the claimant and his attorney will be saddled with attorney's fees and costs for bringing a meritless claim. TEX. CIV. PRAC. & REM.CODE § 74.351(b)(1). The defendant has reason to seek dismissal the moment an expert report reveals its deficiency, or risk the costs of trial and potential defeat at the hands of a jury and judge.

## IV

**The Court's exception exposes the limit of a categorical rule and undermines the Legislature's requirement that a trial court dismiss a case in which the report is inadequate.**

The Court suggests that if the defendant foregoes an interlocutory appeal when it would have succeeded, and the resulting trial establishes malpractice, the defendant can no longer complain about the trial court's failure to dismiss. Why would that be the case? The statute says, without equivocation, that the trial court "shall ... dismiss[ ]" a valid challenge to an inadequate report. TEX. CIV. PRAC. & REM.CODE § 74.351(b). Those words are as plain after a final judgment as before. Under normal practice, an appellate court would reverse the trial court's judgment and "render the judgment that the lower court should have rendered." *See* TEX.R.APP. P. 60.2(c). The case, then, would be dismissed and the victim ordered to pay the tortious defendant.[4] *See, e.g., Jernigan v. Langley,* 195 S.W.3d 91, 94 (Tex.2006) (per curiam) (dismissing with prejudice claims against physician due to inadequate report); *Horizon/CMS Healthcare Corp., Inc. v. Fischer,* 111 S.W.3d 67, 68 (Tex. 2003) (same); *Walker v. Gutierrez,* 111 S.W.3d 56, 66 (Tex.2003) (same); *Am.*

*Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 880 (Tex.2001) (same).

The Court's proposed answer to such a travesty—that the matter becomes "moot" when the issue is tried or that the statute may be ignored as "unjust"—is unpersuasive. 289 S.W.3d at 321; *cf. Carrillo v. State,* 480 S.W.2d 612, 618 (Tex.1972) (holding that appeal of juvenile delinquency adjudication was not moot, despite juvenile's reaching majority during proceedings, as "juvenile should have the right to be exonerated by appeal"). The statute imposes an explicit penalty for noncompliant reports; there is no exception for cases in which the claim's merits are proved. The Court likens the situation to the court-created rule that denials of summary judgment may not be challenged following post-trial adverse judgments. *See, e.g., Ackermann,* 403 S.W.2d at 365. But that conflicts with the Court's earlier conclusion that inadequate reports may be contested after final judgment because "section 74.351 [does not] indicate there are consequences if an appeal from the interlocutory order is not pursued." 289 S.W.3d at 319.

If the statute's silence authorizes an appeal at any time, why would it be limited only to challenges made before "a full trial [in which] the plaintiff prevails"? And why would "trial on the merits" be the only exception to the Court's rule—wouldn't a final summary judgment have the same effect? What if the plaintiff wins at trial but loses on appeal? Would the Court's exception still apply? What if the claimant establishes some (though not conclusive) evidence of breach, causation, and

---

4. The statute entitles a doctor who successfully challenges a claimant's expert report to attorney's fees, but the Court's holding does not address what attorney's fees are recoverable—could the physician recover only those fees incurred until the expert report was challenged or all fees incurred before final judgment? *See* TEX. CIV. PRAC. & REM.CODE § 74.351(b).

damages, demonstrating that the case has arguable merit, but the jury nevertheless finds for the defendant? I presume the Court would conclude the defendant is entitled to his fees and costs, as its exception is conditioned on the claimant's success at trial. If that is so, then it matters little whether the claimant prosecutes a serious claim; the trial court must dismiss even those cases, and make the claimant pay the provider's fees, if the defendant prevails.

## V

**Because the Legislature intended a quick dismissal of frivolous claims and trial of meritorious claims, a defendant asserting a report's inadequacy must immediately appeal to preserve the right to dismissal.**

A bright line rule that requires an immediate appeal is superior to the alternative and consistent with the statute's broader design. Give the defendant a procedural means to test the legitimacy of the claim in the first instance. If refuted by the trial court, give him an immediate appeal. Weak claims will die and the defendant will be made whole; the system will avert the crisis meritless claims impose on society because others will be deterred. Even if the claim is good, the claimant will lose if she proffers a report that masks its worth. And because the lawyer hired to vindicate a good claim will know that half measures will not suffice, she will devote greater resources at the initial stage. The defendant, for strategic reasons (thinking the cost of appeal outweighs the risk of trial) or prudent ones (assessing the report as sufficiently chronicling an actionable breach of the standard of care)—still may elect to try the case, but would then be limited to arguing the merits. This approach ensures that a meritorious case is not unduly restricted, while preserving an argument on appeal that no or insufficient evidence requires reversal.

## VI

### Conclusion

Allowing a defendant to challenge the expert report after final judgment, as the Court does, injects an element of uncertainty into the case and risks turning this screening mechanism into a trump card. It prolongs litigation in those cases in which an expert report is clearly insufficient, contrary to the Legislature's intent. The exception the Court adopts amounts to a concession that, under some circumstances, the interlocutory route must be followed or lost. But the exception raises at least two concerns. First, as a matter of principle, the exception is inconsistent with the reasoning underlying the Court's general rule. The statute requires speedy dismissal when the provider timely challenges an inadequate report. Nowhere does the Act provide that the sanction disappears when the claimant prevails. The injustice the Court attempts to evade is best addressed by requiring that the provider immediately appeal a trial court's refusal to dismiss a case when the report is flawed. Second, the Court's exception applies only if the plaintiff prevails. There will be many instances in which the claimant has amassed competent evidence of damages, caused by a breach of the appropriate standard of care, and yet fails to persuade the trier of fact by a preponderance of the evidence. If an exception is to apply, it should encompass all cases in which the record demonstrates the claim's arguable validity, irrespective of the outcome.

Because the statutory goal is to quickly dispense with frivolous health care litigation, I would hold that section 51.014(a)(9)

authorizes a provider to immediately appeal a trial court's denial of relief under section 74.351(b), and that his failure to do so forecloses a later complaint about the ruling. Because the Court concludes otherwise, I respectfully dissent.