# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

September 30, 2010

The Honorable Kurt Sistrunk
Galveston County Criminal District Attorney
600 59th Street, Suite 1001
Galveston, Texas 77551-4137

Opinion No. GA-0805

Re: Proper method of appraising the value of residence homesteads damaged by Hurricane Ike in 2008 (RQ-0851-GA)

Dear Mr. Sistrunk:

You ask about the proper method of appraising the value of residence homesteads damaged by Hurricane Ike in 2008.[1]

Section 23.23 of the Tax Code provides, in relevant part:

> (a) Notwithstanding the requirements of Section 25.18 and regardless of whether the appraisal office has appraised the property and determined the market value of the property for the tax year, an appraisal office may increase the appraised value of a residence homestead for a tax year to an amount not to exceed the lesser of:
>
> (1) the market value of the property for the most recent tax year that the market value was determined by the appraisal office; or
>
> (2) the sum of:
>
> (A) 10 percent of the appraised value of the property for the preceding tax year;
>
> (B) the appraised value of the property for the preceding tax year; and
>
> (C) the market value of all new improvements to the property.

TEX. TAX CODE ANN. § 23.23(a) (West Supp. 2010). Thus, under this provision, a particular residence homestead may not be appraised for a particular tax year at an amount that exceeds by

---

[1]Request Letter (*available at* http://www.texasattorneygeneral.gov).

more than ten percent of the property's appraised value for the preceding tax year *plus* "the market value of all new improvements to the property." *Id.* § 23.23(a)(2)(C).

Subsection (e) of section 23.23 provides the following:

> (e) In this section, "new improvement" means an improvement to a residence homestead made after the most recent appraisal of the property that increases the market value of the property and the value of which is not included in the appraised value of the property for the preceding tax year. The term does not include repairs to or ordinary maintenance of an existing structure or the grounds or another feature of the property.

*Id.* § 23.23(e). Prior to its 2007 amendment, subsection (e) provided that the term "new improvement" does not include "ordinary maintenance of an existing structure or the grounds or another feature of the property." Tex. Att'y Gen. Op. No. GA-0091 (2003) at 2; *see* Act of June 1, 1997, 75th Leg., R.S., ch. 1039, § 47, 1997 Tex. Gen. Laws 3897, 3918. A 2003 opinion of this office declared that the term "'new improvement' includes repairs made following a natural disaster because the repairs are not 'ordinary maintenance.'" Tex. Att'y Gen. Op. No. GA-0091 (2003) at 8. The Eightieth Legislature amended subsection (e) to its present version by adding the words "repairs to or." *See* Act of May 22, 2007, 80th Leg., R.S., ch. 1355, 2007 Tex. Gen. Laws 4644, 4644–45. As a consequence, under the amended version of subsection (e), the term "new improvement" does not "include repairs . . . to an existing structure."

In 2009, because of extensive damage to structures in several coastal counties, the Legislature amended subsection (f), which now provides:

> (f) Notwithstanding Subsections (a) and (e) and except as provided by Subdivision (2), an improvement to property that would otherwise constitute a new improvement is not treated as a new improvement if the improvement is a replacement structure for a structure that was rendered uninhabitable or unusable by a casualty or by wind or water damage. For purposes of appraising the property under Subsection (a) in the tax year in which the structure would have constituted a new improvement:
>
> (1) the appraised value the property would have had in the preceding tax year if the casualty or damage had not occurred is considered to be the appraised value of the property for that year, regardless of whether that appraised value exceeds the actual appraised value of the property for that year as limited by Subsection (a); and
>
> (2) the replacement structure is considered to be a new improvement only if:

> (A)   the square footage of the replacement structure exceeds that of the replaced structure as that structure existed before the casualty or damage occurred; or
>
> (B)   the exterior of the replacement structure is of higher quality construction and composition than that of the replaced structure.

TEX. TAX CODE ANN. § 23.23(f) (West Supp. 2010). As a result of the enactment of subsection (f), a residence homestead that has been "rendered uninhabitable or unusable by a casualty or by wind or water damage" is treated for appraisal purposes in a special manner.

In construing a statute, our primary objective, like that of the courts, is "to ascertain and give effect to Legislature's intent." *City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex. 2006). Legislative intent is best "expressed by the statute's language and the words used, unless the context necessarily requires a different construction or a different construction is expressly provided by statute." *Hernandez v. Ebrom*, 289 S.W.3d 316, 318 (Tex. 2009). "Unambiguous statutory language is interpreted according to its plain language unless such an interpretation would lead to absurd results." *Id.*

Subsection (f) is triggered when a "replacement structure" has been built to replace a residence that was "rendered uninhabitable or unusable by a casualty or by wind or water damage." TEX. TAX CODE ANN. § 23.23(f) (West Supp. 2010). The statute declares that such a "replacement structure" is not considered a "new improvement" under subsection (e), and it sets forth the parameters for "appraising the property under Subsection (a) in the tax year in which the structure would have constituted a new improvement." *Id.* The statute does not define the terms "uninhabitable" or "unusable."

Subsection (f) establishes a formula to be applied to the replacement structure for purposes of appraising the property under subsection (a). First, under subdivision (f)(1), the property is assessed at "the appraised value the property would have had in the preceding tax year if the casualty or damage had not occurred." *Id.* That value is then used in calculating the maximum appraised value for the current tax year. *Id.* Second, the replacement structure is considered to be a "new improvement" under the subsection (a) calculation only if it meets the requirements of subdivision (f)(2). *Id.* With this background, we turn to the three scenarios you pose.

### Scenario 1

A homestead has an appraised value of $300,000 on January 1, 2008. The homestead is partially damaged by Hurricane Ike in September 2008. As a result, the homestead's value on January 1, 2009 is appraised by the CAD at $150,000. During 2009, renovations restore the homestead to its pre Hurricane Ike status.

Request Letter at 4.

In this scenario, you have not indicated that the structure was "rendered uninhabitable or unusable," and we will, for purposes of your question, presume that it was not. Because the structure was not "rendered uninhabitable or unusable," subsection (f) is not applicable. If the renovations to the property are reasonably determined to constitute "repairs to" an existing structure, the renovations, by virtue of subsection (e), fall outside the definition of "new improvement." In that case, the appraised value of the property for the 2010 tax year is calculated under subsection (a) in the following manner: $150,000 (the 2009 appraised value); *plus* a maximum of $15,000 (the cap established by subsection (a)(2). If on the other hand the renovations are reasonably determined not to constitute "repairs to" an existing structure, such renovations must be treated as a "new improvement." In that event, the appraised value for tax year 2010 is calculated under subsection (a) in the following manner: $150,000 (the 2009 appraised value); *plus* a maximum of $15,000 (the cap established by subsection (a)(2)); *plus* "the market value of all new improvements to the property." Whether the renovation of any particular structure constitutes mere "repairs" or a "new improvement" is a fact question whose resolution is inappropriate to the opinion process.[2]

### Scenario 2

A homestead has an appraised value of $300,000 on January 1, 2008. The homestead is extensively damaged by Hurricane Ike in September 2008 and is uninhabitable. As a result, the homestead's value on January 1, 2009 is appraised by the CAD at $100,000. The homestead is restored to its pre Ike condition in 2009.

*Id.* at 4–5.

In this scenario, the structure has been rendered uninhabitable by storm damage. As a result, the replacement structure will be valued in accordance with subsection (f). The determination of the appraised value for tax year 2010 is calculated, pursuant to subdivision (f)(1) by assuming a value that the property "would have had [in 2009] if the casualty or damage had not occurred," and using such value in the subsection (a) calculation. It is unclear what the Legislature intended by its use of the phrase "would have had." Because the appraisal district is statutorily charged with the duty of "appraising property in the district," the appraisal district should, in the first instance and in accordance with subdivision (f)(1), determine the value that the property "would have had [in 2009]

---

[2]Attorney General Opinion GA-0091 considered the argument that the term "ordinary maintenance" was synonymous with the term "repairs," but rejected that contention largely because the word "maintenance" was modified by the word "ordinary." Tex. Att'y Gen. Op. No. GA-0091 (2003) at 5. This construction has been superseded by the Legislature's 2007 amendment of subsection (e), which specifically excluded "repairs" from the definition of "new improvement." *See id.* at 2–3. Opinion GA-0091 also noted that section 11.26 of the Tax Code, which limits the appraised value of renovated homesteads owned by the elderly or disabled, requires that the appraiser determine whether a structure has been totally, or only partially, destroyed. The opinion suggested that, if "the value of the damage totaled less than half of the homestead's original value, an appraiser reasonably could find that the homestead was repaired" rather than fully reconstructed. *Id.* at 7. In view of the present language of section 23.23(e), this suggestion should not necessarily be regarded as persuasive. In any event, as we have noted, a determination of whether any particular renovation constitutes a "repair" or a "new improvement" is a question of fact.

if the casualty or damage had not occurred."[3] *See* TEX. TAX CODE ANN. § 6.01(b) (West 2008) ("The [appraisal] district is responsible for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district.").

In addition to the calculation used by the appraisal district in determining the value a particular property "would have had" in 2009, subsection (a) of section 23.23 authorizes an appraisal district to "increase the appraised value of a residence homestead for a tax year not to exceed the lesser of: (1) the market value of the property for the most recent tax year that the market value was determined by the appraisal office"; or (2) the sum of (A) the value the property "would have had" in 2009 as determined by the appraisal district; (B) 10 percent of that value; and (C) the market value of all new improvements to the property." Because you have indicated in this scenario that there were no "new improvements" to the property in 2010, the appraisal district may add to its appraised value for tax year 2010 a maximum of ten percent of the value the property "would have had" in 2009, as determined by the appraisal district.

### Scenario 3

A homestead has an appraised value of $300,000 on January 1, 2008. The homestead is extensively damaged by Hurricane Ike in September 2008 and is uninhabitable. As a result, the homestead's value on January 1, 2009 is appraised by the CAD at $100,000. The homestead is renovated; but in making the renovations, the owner changes the exterior of the structure or increases the square footage of the homestead . . . .

Request Letter at 5.

In this scenario, the structure has been rendered uninhabitable by storm damage. When the structure is replaced, either the square footage is increased *or* the exterior of the replacement structure is of higher quality construction and composition than was the previous structure. In such a situation, the determination of the 2010 appraised value under subsection (a) is governed first by the application of subdivision (f)(1), which establishes the appraised value for tax year 2009 at the value that the property "would have had [in 2009] if the casualty or damage had not occurred," and then by the application of subdivision (f)(2), which requires that the replacement structure be treated as a "new improvement." TEX. TAX CODE ANN. § 23.23(f)(1)–(2) (West Supp. 2010). As a result, the calculation of the 2010 appraised value is determined by subsection (a): the value that the property "would have had [in 2009] if the casualty or damage had not occurred; *plus* a maximum of ten percent of that value under subsection (a); *plus* "the market value of all new improvements to the property" that are described by subdivision (f)(2).

---

[3]Under your second scenario, it does not appear that the replacement structure will be considered a "new improvement" under subdivision (f)(2).

### S U M M A R Y

Calculation of the 2010 appraised value of a residence homestead damaged by Hurricane Ike in 2008 and renovated to its pre-storm status is determined by section 23.23(f) of the Tax Code so long as the structure was "rendered uninhabitable or unusable." If the structure was not rendered uninhabitable or unusable, calculation of the 2010 appraised value is dependent upon whether the renovations may reasonably be said to constitute a mere "repair" or a "new improvement" under section 23.23(e). If the structure was rendered uninhabitable or unusable, calculation of the 2010 appraised value is dependent upon the appraised value the property would have had in 2009 *but for* the storm damage, together with the market value of all new improvements to the property as described by subdivision (f)(2).

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee