# IN THE SUPREME COURT OF TEXAS

No. 19-0263

BONSMARA NATURAL BEEF COMPANY, LLC AND
GEORGE CHAPMAN, INDIVIDUALLY, PETITIONERS,

v.

HART OF TEXAS CATTLE FEEDERS, LLC, JAMES MICHAEL HAYES, INDIVIDUALLY,
LYNN LANDRUM, INDIVIDUALLY, AND HENRY O. PICKETT II, INDIVIDUALLY,
RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS

JUSTICE GREEN, joined by CHIEF JUSTICE HECHT and JUSTICE DEVINE, dissenting.

The issue in this case is whether a party that loses after a trial on the merits is still permitted to successfully assert on appeal its contractual right to arbitration of the dispute. That is, will the Court sanction the proverbial second bite at the apple? Common sense dictates that the gateway issue of arbitration must be resolved before trial because it is an alternate means of dispute resolution agreed upon by the parties. After a trial, the right to arbitration becomes moot because the dispute has been resolved by then. But by applying a myopically permissive interpretation of the interlocutory appeal statute, the Court concludes—in defiance of all common sense—that an interlocutory appeal of a trial court's denial of a motion to compel arbitration is not required, and a challenge to such an order can wait until after a trial on the merits. The absurd result is that a party that fails to timely assert its right to arbitration under the interlocutory appeal statute can

now, after losing at trial, be awarded a do-over in an arbitration proceeding—it gets another bite at the apple. So instead of taking a common-sense approach consistent with how Texas courts have treated other similar interlocutory appeal provisions, the Court—under the guise of diligent textualism—reaches a conclusion that undermines arbitration's very purpose. Because I cannot agree with the Court's misreading of the statute leading to this unwarranted and unearned outcome, I respectfully dissent.

The Court today concludes, for the first time, that a party has the option to either challenge a trial court's denial of a motion to compel arbitration on interlocutory appeal or wait until after final judgment to appeal the denial. *Ante* at__. The Court's rule not only endorses gamesmanship from parties who are unhappy with a trial's outcome, it vitiates the Legislature's explicit direction that the resolution of whether parties should arbitrate a dispute need not wait until after final judgment.

Arbitration agreements promote efficiency by acting as a cost and time-saving mechanism, while safeguarding valuable and finite judicial resources. *See L.H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 352 (Tex. 1977) (citation omitted) ("In addition to alleviating some measure of the burden on the courts, arbitration in a commercial context is a valuable tool which provides business people, and all citizens, with greater flexibility, efficiency, and privacy."); *see also Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992) (footnote omitted) ("Efficiency and lower costs are frequently cited as the main benefits of arbitration."). Recognizing the valuable role arbitration agreements play in resolving disputes, this Court has explained that "courts employ a strong presumption in favor of arbitration" in "deciding whether claims fall within an arbitration agreement." *In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011) (citations omitted).

In keeping with the favorable treatment of arbitration agreements, the question of whether a case should be sent to arbitration is a gateway issue that courts must decide at the outset of litigation. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citations omitted) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."); *see also Perry Homes v. Cull*, 258 S.W.3d 580, 589 (Tex. 2008) (citations omitted) (explaining that courts decide "gateway matters regarding 'whether the parties have submitted a particular dispute to arbitration'"). Indeed, this Court specifically invited the Legislature, "[i]n the interests of promoting the policy considerations of rigorous and expedited enforcement of arbitration agreements, . . . to consider amending the Texas [Civil Practice and Remedies Code] to permit interlocutory appeals of orders issued pursuant to the Federal [Arbitration] Act." *Tipps*, 842 S.W.2d at 272. The Legislature responded by amending the Texas Civil Practice and Remedies Code in 2009 to provide immediate review of a trial court's denial of a motion to compel arbitration in cases subject to the Federal Arbitration Act (FAA). *See* Act of May 27, 2009, 81st Leg., R.S., ch. 820, § 1, 2009 Tex. Gen. Laws 2061, 2061 (current version at TEX. CIV. PRAC. & REM. CODE § 51.016).

Section 51.016 of the Texas Civil Practice and Remedies Code provides that in suits subject to the FAA, a party "may" pursue an interlocutory appeal "under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16." TEX. CIV. PRAC. & REM. CODE § 51.016. The Court concludes that the Legislature's use of "may" in section 51.016 means that litigants are permitted to either challenge a trial court's denial of a motion to compel arbitration on interlocutory appeal or wait until after final judgment to do so. *Ante* at__.

3

The Court's construction of section 51.016 guts the statute of its explicit purpose: to resolve whether a case should be sent to arbitration before the great expense of judicial and litigant resources that accompany a trial. Under the Court's new rule, the following hypothetical is permissible, if not likely: a defendant files a motion to compel arbitration; the trial court denies the motion; the defendant refuses to take an interlocutory appeal challenging the trial court's denial of the motion to compel arbitration (now knowing full well that he can readily appeal the trial court's denial after final judgment); the parties proceed to trial; the trial is conducted free of any reversible error worthy of appellate review; the jury returns a verdict in the plaintiff's favor; the defendant appeals the trial court's pre-trial denial of the motion to compel arbitration; and the court of appeals overturns the trial court's denial of the motion to compel arbitration, erasing the jury's verdict and the vast resources expended at trial only to start the process anew in arbitration. The Court's rule reduces any trial carried out after the denial of a motion to compel arbitration to a summary jury trial in which a party can preview the jury's decision before attempting to take a second pass on the case in arbitration.

In reaching its conclusion, the Court attempts to shoehorn its construction of section 51.016 into the scope of our opinion in *Hernandez v. Ebrom*, 289 S.W.3d 316 (Tex. 2009), by suggesting that section 51.016 "is exactly like the statute in *Hernandez* in all relevant respects." *Ante* at__. In doing so, the Court ignores *Hernandez*'s narrow scope and the stark difference between a defendant's right to recover attorney's fees and costs arising out of a frivolous medical malpractice lawsuit and the question of whether a case should be sent to arbitration. The Court's opinion in *Hernandez* does not purport to offer a universal rule for deciding whether an issue not challenged on interlocutory appeal may be raised on appeal after final judgment. To the contrary, *Hernandez*

4

demonstrates that the answer to this question depends on the purpose of the interlocutory appeal provision.

*Hernandez* dealt with Dr. Hernandez's failure to pursue an interlocutory appeal following the trial court's denial of his motion to dismiss and recover attorney's fees on the basis that the plaintiff's expert witness report was deficient in a health care liability lawsuit. 289 S.W.3d at 317–18. Six months after the trial court denied Hernandez's motion to dismiss, the plaintiff nonsuited the case, and the trial court dismissed the case with prejudice. *Id.* at 317. Following the dismissal, Hernandez appealed the trial court's earlier denial of his motion to dismiss and recover attorney's fees based on the deficiency of the expert report. *Id.* The court of appeals dismissed Hernandez's appeal for want of jurisdiction, concluding that the trial court's denial of Hernandez's motion to dismiss was moot because the trial court had dismissed the case with prejudice. *Id.*

The question before this Court was whether Hernandez waived his right to challenge the trial court's denial of his motion to dismiss and recover attorney's fees by failing to pursue an interlocutory appeal. *Id.* at 318. Under the statute in effect at the time, a plaintiff in a health care liability lawsuit was required to serve a medical expert report on all defendants within 120 days after filing the petition. *Id.* A defendant could object to the sufficiency of the expert report, and if the trial court concluded that the report was deficient, then the trial court was required to dismiss the plaintiff's lawsuit with prejudice and award the defendant attorney's fees and costs. *Id.* Section 51.014(a)(9) of the Civil Practice and Remedies Code states that a defendant "may" bring an interlocutory appeal challenging a trial court's denial of the defendant's motion to dismiss under section 74.351. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9) ("A person may appeal from an

5

interlocutory order . . . that . . . denies all or part of the relief sought by a motion under Section 74.351(b) . . . .").

This Court concluded that the Legislature authorized an interlocutory appeal of a trial court's denial of a defendant's motion to dismiss and recover attorney's fees on the basis of a deficient expert report, and that a defendant may appeal the denial of the motion to dismiss if the trial court ultimately enters final judgment dismissing the lawsuit. *Hernandez*, 289 S.W.3d at 319. In reaching this conclusion, the Court acknowledged that allowing an appeal after final judgment in cases subject to section 74.351 protects a defendant's "statutory right to potential reimbursement for certain of his attorney's fees and costs." *Id.* (citation omitted). As the Court emphasized, prohibiting defendants from asserting their statutory rights after final judgment "would dilute the deterrent value of the statute." *Id.* at 320 (citations omitted). The Court reasoned that limiting the opportunity to challenge a motion to dismiss to an interlocutory appeal "could induce defendants who might not otherwise take an interlocutory appeal from denials of their motions to do so in order to avoid losing any chance of recovering sanctions." *Id.* Such a holding would likely "slow down the process of disposing of health care liability claims . . . and would increase costs of resolving the claims." *Id.* Accordingly, the Court concluded that a defendant in a lawsuit brought under section 74.351(b) may, after the trial court enters final judgment dismissing the lawsuit, bring an appeal challenging the trial court's earlier denial of the defendant's motion to dismiss and recover attorney's fees and costs.

Importantly, Hernandez's appeal following final judgment did not seek to set aside a decision on the merits of the case based on a faulty ruling on the sufficiency of the plaintiff's expert report at the outset. The dissent there argued that the Court's rule would allow a party who lost in

a trial on the merits to set aside the judgment because the expert report was inadequate. *Id.* at 330–31 (Jefferson, C.J., dissenting). The Court rejected that argument, reasoning that "by requiring timely expert reports, the Legislature intended to reduce frivolous claims[, not] preclude meritorious claims." *Id.* at 321 (majority opinion). A claim on which the plaintiff prevailed at trial "could not sensibly be classified as frivolous. Construing the statute to require post-trial dismissal of such a claim because of an earlier inadequate report would be construing the statute to yield an unjust and nonsensical result—one we presume the Legislature did not intend." *Id.* (citations omitted). The present case is like the one the *Hernandez* dissent hypothesized. Having lost on the merits, the Hart defendants appeal an interlocutory ruling on their motion to compel arbitration to simply retry the case. That is exactly the result the *Hernandez* Court called "unjust and nonsensical." *Id.* (citations omitted). The Court in the present case embraces *Hernandez* as support for a retrial, never acknowledging or even seeming to notice that *Hernandez* rejected that very result.

The Court's analysis in *Hernandez* was tethered to the specific section providing guidelines for pursuing sanctions against a claimant who fails to comply with section 74.351(b)'s expert-report requirements in a health care liability claim. That analysis should not be read to apply to every statute in which the Legislature has used the word "may" to authorize an interlocutory appeal. *See id.* at 323 (Jefferson, C.J., dissenting) ("Efficiency, third-party interests, public policy, jurisdiction, a preference for outcomes based on substance—these and other concerns have historically informed the decision whether an interlocutory appeal is lost if not taken immediately. The analysis can be straightforward in a given case, but it may also require a deeper understanding of the purposes interlocutory review was meant to serve."). The rule to be derived from *Hernandez*

is that each instance in which the Legislature has authorized an interlocutory appeal must be analyzed individually to determine whether a party who does not pursue an interlocutory appeal waives its right to challenge the interlocutory order on appeal after final judgment.

To be sure, as the Court in *Hernandez* acknowledged, no universal rule dictates when a party waives its right to challenge an interlocutory order after final judgment by not pursuing a statutorily authorized interlocutory appeal. *Id.* at 319 (majority opinion). In distinguishing a court of appeals case, *Bayoud v. Bayoud*, 797 S.W.2d 304 (Tex. App.—Dallas 1990, writ denied), from the facts in *Hernandez*, the Court explained that "*Bayoud* was not addressing the type of interlocutory appeal at issue" in *Hernandez*. *Hernandez*, 289 S.W.3d at 319. *Bayoud* dealt with a trial court's order pertaining to a preliminary injunction and whether an accompanying bond was required. 797 S.W.2d at 311–12. Relying on section 51.014(a)(4), the court of appeals concluded that the appellants waived "their right to complain of the validity of the bond or the injunction order" because they did not pursue an interlocutory appeal. *Id.* at 312 (citing TEX. CIV. PRAC. & REM. CODE § 51.014(4)). The Court in *Hernandez* distinguished *Bayoud*, but it did not disavow the Fifth Court of Appeals' holding that the appellants in *Bayoud* "lost their right to complain of the validity of the bond or the injunction order as they should have appealed within the proper time limits after the grant of the injunction." *Id.* The Court distinguished *Bayoud* without criticizing the court of appeals' holding in that case, which highlights that no singular rule governs whether a party that fails to seek immediate interlocutory appeal of an order waives the right to later appeal that order after final judgment. In fact, *Hernandez* and its discussion of *Bayoud* indicate that, as this Court always does, we are to interpret the use of the word "may" within the context of the statute. *See Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019) (citations omitted) ("In

8

interpreting statutes, we must look to the plain language, construing the text in light of the statute as a whole."); *see also* TEX. GOV'T CODE § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

The *Bayoud* case is hardly the only instance in which courts have held that a party waives an appeal by not pursuing it earlier in the case. Another example is an order appointing a receiver, which may be challenged by interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(1). The Fifth Court of Appeals concluded in *Long v. Spencer*, 137 S.W.3d 923 (Tex. App.—Dallas 2004, no pet.), that the time to challenge the appointment of a receiver is on interlocutory appeal. *Id.* at 926. The First Court of Appeals offered a compelling reason for its conclusion that a party waives its ability to challenge the appointment of a receiver by not pursing an interlocutory appeal: "The setting aside of an order of receivership has 'the effect of nullifying all intervening acts of the receiver . . . or, at least, of raising serious questions concerning the validity of such intervening acts.'" *Sclafani v. Sclafani*, 870 S.W.2d 608, 611 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (citation omitted).

Waiving a challenge to the appointment of a receiver is analogous to a trial court's denial of a motion to compel arbitration. If a trial court denies a motion to compel arbitration and the case proceeds to trial, but the trial court's ruling is later reversed on appeal after final judgment, the litigation in the trial court would be nullified. Of course, this is why the Legislature provided an opportunity for litigants to challenge a trial court's refusal to compel arbitration through an interlocutory appeal. TEX. CIV. PRAC. & REM. CODE § 51.016; *see also Tipps*, 842 S.W.2d at 269 (explaining that "the main benefits of arbitration lie in expedited and less expensive disposition of a dispute"). Allowing a party to challenge a trial court's denial of a motion to compel arbitration

after final judgment vitiates the purpose of the interlocutory appeal statute. *See Tipps*, 842 S.W.2d at 272 (concluding that awaiting final judgment for review of an arbitrability decision "would vitiate and render illusory the subject matter of an appeal"). Other courts have likewise concluded that a party waives its challenge to the appointment of a receiver by not pursuing an interlocutory appeal. *See Benningfield v. Benningfield*, 155 S.W.2d 827, 827 (Tex. App.—Austin 1941, no writ); *McFarlane v. Greenameyer*, 199 S.W. 304, 305 (Tex. App.—Galveston 1917, no writ).

The Legislature has authorized interlocutory review of a number of issues that require immediate resolution. The answer to whether a party is foreclosed from challenging an interlocutory order on appeal after final judgment because it did not pursue an interlocutory appeal thus depends on the interest, right, or remedy that the interlocutory appeal protects. In *Hernandez*, we were guided by the statute's protection of the defendant's right to recover attorney's fees, a right that remained until it was finally determined that the plaintiff's claim was frivolous. 289 S.W.3d at 319–20. Under those circumstances, and based on the language of the statute in context, we concluded that if that right is to be protected, a defendant must be able to pursue an appeal after final judgment. *Id.* As the Court's opinion in *Hernandez* acknowledged, prohibiting a defendant from asserting his "statutory right would dilute the deterrent value of the statute." *Id.* at 320 (citing *Villafani v. Trejo*, 251 S.W.3d 466, 470 (Tex. 2008)) ("Allowing defendants to seek sanctions under the MLIIA for attorney's fees and dismissal with prejudice deters claimants from filing meritless suits.").

But, like in the case of an appointment of a receiver or the entry of an injunction, the situation is entirely different here—a trial court's denial of a motion to compel arbitration governed by the FAA. Whether a case should be arbitrated pursuant to an arbitration clause is a gateway

10

issue that must be determined at the onset of litigation. *See RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018) (citation omitted) ("Arbitration clauses that assign gateway questions such as the arbitrability of the dispute are an established feature of arbitration law."). A trial court's denial of a motion to compel arbitration influences the entire course of litigation. The Legislature's authorization of interlocutory review of a trial court's denial of a motion to compel arbitration must be read, therefore, as a safeguard against the unnecessary expenditure of countless resources that accompanies the litigation of a case in court that should have been arbitrated. *See Tipps*, 842 S.W.2d at 272–73 (footnote omitted) (recognizing that by requiring the parties to proceed to final judgment before a defendant can challenge the denial of arbitration, the defendant "would be deprived of the benefits of the arbitration clause it contracted for, and the purpose of providing a rapid, inexpensive alternative to traditional litigation would be defeated"). Allowing a party to challenge a trial court's denial of a motion to compel arbitration after the vast expenses that accompany a trial and final judgment obviates the aim of the interlocutory appeal statute—to resolve this issue at the onset of litigation.

The Court avoids addressing many of the concerns discussed above by acknowledging that it is the Legislature's role to decide policy—not ours. *Ante* at___. But in an attempt to not invade the Legislature's policy-making purview, the Court abdicates its role to determine what policy decisions the Legislature *has* made. *See Waak v. Rodriguez*,___S.W.3d___, ___ (Tex. 2020) ("It is certainly not our place to make policy decisions that are for the Legislature to make. But it is exclusively our place to determine what policy decisions they have made."). It is no doubt true that it is the Legislature's job to make policy. *Id.* But in fulfilling our role to determine what a statute means, we cannot interpret a statute such that we nullify the policy decisions the Legislature

11

made when enacting that statute. *See Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 441 (Tex. 2012) (explaining that in determining what the Legislature intended to provide in a statute, "we must consider the purposes, policies, procedural requirements, and remedies of the" statute). Indeed, the Court's opinion in *Hernandez*—on which the Court relies heavily in reaching its holding in the present case—discussed the policy decisions the Legislature made in crafting the statute at issue in that case and how those decisions informed the Court's holding. *See* 289 S.W.3d at 320 (explaining that prohibiting an appeal after a trial court dismisses a case under section 74.351 "would dilute the deterrent value of the statute," "slow down the process of disposing of health care liability claims[,] . . . and would increase the costs of resolving the claims").

Not only does the Court's opinion today fly in the face of section 51.016's purpose, it also blesses litigation tactics that are in direct conflict with the rule that a party waives the right to request arbitration after participating in litigation. This rule, as discussed in *Perry Homes*, makes practical sense: should a party be permitted to seek arbitration on the eve of trial after the expenditure of great resources in preparation for trial? Of course not. By the same token, a party who waits until receiving an unfavorable verdict after the conclusion of trial should not be permitted to retry the case again in arbitration.

We explained in *Perry Homes* that it is settled law in Texas that "a party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice." 258 S.W.3d at 589–90 (citations omitted). In deciding whether a party has substantially invoked the litigation process, we take an approach similar to the federal courts' totality-of-the-circumstances analysis, which is deployed on a case-by-case basis. *Id.* at 590 (citations omitted). The analysis of whether a party substantially invokes the litigation process,

12

we have explained, is similar to the estoppel analysis: "a party who enjoys substantial direct benefits by gaining an advantage in the pretrial litigation process should be barred from turning around and seeking arbitration with the spoils." *Id.* at 593.

In *Perry Homes*, the plaintiffs conducted a number of litigation activities that included objecting to arbitration, responding to requests for disclosure, filing multiple motions to compel, and sending deposition notices. *Id.* at 595. Then, fourteen months after filing their lawsuit and shortly before trial, the plaintiffs requested that the case be sent to an arbitrator. *Id.* at 596. The trial court granted the plaintiffs' request and compelled arbitration. *Id.* at 593. Applying the totality-of the-circumstances analysis, the Court concluded that it was "unquestionabl[e]" that the plaintiffs substantially invoked the litigation process. *Id.* at 595. Specifically, the Court held that because the plaintiffs waited to request the trial court to compel arbitration until the eve of trial, they could not turn around and seek arbitration after enjoying the benefits of extensive discovery. *Id.* at 596–97; *see In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 764 (Tex. 2006) (citation omitted) ("We agree that allowing a party to conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial defeats the FAA's goal of resolving disputes without the delay and expense of litigation."). The Court explained that, "[t]he rule that one cannot wait until 'the eve of trial' to request arbitration is not limited to the evening before trial; it is a rule of proportion." *Perry Homes*, 258 S.W.3d at 596 (citation omitted). Accordingly, the Court remanded the case to the trial court for a "prompt trial." *Id.* at 601.

In the present case, after the trial court refused to compel arbitration, Hart declined to pursue interlocutory review of the trial court's refusal to compel arbitration. Instead, Hart proceeded to participate in the trial, which included pursuing counterclaims against Bonsmara,

13

subpoenaing witnesses, taking depositions, and asking the trial court to submit jury questions consistent with Hart's counterclaims. After the jury returned a verdict favorable to Bonsmara, Hart sought a second bite at the apple and appealed the final judgment on the ground that the trial court erred in denying Hart's motion to compel arbitration. If a party waives its right to arbitrate by engaging in litigation conduct up to the eve of trial, it can only be true that a party that forgoes its opportunity to seek interlocutory appeal of the trial court's denial of a motion to compel arbitration and instead litigates the case through trial likewise waives its right to arbitrate. Any other result is nonsensical. By failing to pursue an interlocutory appeal and then fully participating in the litigation, Hart engaged in conduct that substantially invoked the litigation process and therefore waived its right to seek arbitration. *See id.* at 592. The Court's opinion holding otherwise cuts against this well-settled principle.

Finally, as we explained in *Perry Homes*, waiver by substantially invoking the litigation process also requires a showing of prejudice. *Id.* at 595. In the arbitration context, prejudice "relates to inherent unfairness—that is, a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage." *Id.* at 597 (citations omitted). Only after receiving an adverse final judgment from the trial court did Hart appeal the trial court's pre-trial refusal to compel arbitration. This process is innately prejudicial. Permitting Hart to wait until after it substantially invoked the litigation process to appeal the trial court's refusal to compel arbitration gives Hart a second chance at resolving this dispute in another forum—an unquestionably unfair advantage that prejudices Bonsmara. The Court's conclusion is inconsistent with the longstanding rule in Texas that a party who substantially invokes the litigation process and seeks arbitration on the eve of trial waives arbitration. *See id.* (explaining that a party waived arbitration by

14

substantially invoking the litigation process to the opposing party's detriment after "[t]hey delayed disposition by switching to arbitration when trial was imminent and arbitration was not").

\* \* \*

The Court's decision today runs counter to common sense and basic notions of fairness. By allowing litigants to see the outcome of a trial before appealing a denial of a motion to compel arbitration, the Court endorses a dispute resolution process that in this case—and likely in many others—will result in double the cost and double the time. This approach weaves uncertainty and inefficiency into the fabric of any litigation that includes a dispute over an arbitration clause. I would reverse the judgment of the court of appeals and hold that a party may not wait until after trial and final judgment to challenge a trial court's pre-trial denial of a motion to compel arbitration. Because the Court holds otherwise, I respectfully dissent.

_____
Paul W. Green
Justice

**OPINION DELIVERED:** June 26, 2020

15